Robert L. Brace, Esq., Ca. Bar No. 122240
Michael P. Denver, Esq., Ca. Bar No. 199279
**HOLLISTER & BRACE**
P.O Box 630
Santa Barbara, Ca. 93102
Telephone: (805) 963-6711
*Attorneys for Plaintiffs,*
*and all others similarly situated*



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: SOUTHWEST EXCHANGE, INC. INTERNAL REVENUE SERVICE § 1031 TAX DEFERRED EXCHANGE LITIGATION<br><br>Sorrell, et al. v. Southwest Exchange, Inc., et al. | MDL Docket No. 1878<br>Case No. 07-cv-01394-RCJ-(LRL)<br><br>**FINAL ORDER AND JUDGMENT OF DISMISSAL RE: WAVE V SETTLEMENT WITH CAROLINA CASUALTY COMPANY AND RSUI INDEMNITY COMPANY** |

On the 19th day of July, 2010, a hearing was held before this Court to determine: (1) whether the terms and conditions of the Wave V Settlement Agreement between (i) the Sorrell Plaintiffs, (ii) the Plaintiffs in the related state court action styled *In re Receivership of Southwest Exchange, Inc. and Consolidated Litigation,* Case No. 07-A-535439-B, in the Eighth Judicial District Court, Clark County, Nevada ("Individual Plaintiffs"), (iii) the Receiver, Southwest Exchange, Inc. ("SWX"), Qualified Exchange Services, Inc. ("QES") and the other Receivership Entities, and (iv) Carolina Casualty Company, RSUI Indemnity Company, and their insureds who to be released by the Settlement Agreement attached hereto as Exhibit A ("Settlement Agreement") as identified in the Settlement Agreement (collectively the "Settling Defendants"), is fair, reasonable and adequate for the settlement of all claims released therein by all releasing persons against all released persons and should be approved; and (2) whether Judgment should be entered dismissing the above entitled action on the merits and with prejudice in favor of the Settling Defendants. The Settlement Agreement is incorporated herein by reference.

1   The Court considered all matters submitted to it at the hearing and otherwise, and

2   determined that a notice of the hearing substantially in the form approved by the Court was

3   timely mailed to all members of the Settlement Class.

4   **NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND**

5   **DECREED THAT:**

6   1.   The Court has jurisdiction over the subject matter of this dispute, all

7   members of the Settlement Class, and the Settling Defendants.

8   2.   The Court finds that for purposes of settlement only the prerequisites for

9   a class action under the Federal Rules of Civil Procedure 23(a) and (b)(3) have been satisfied

10  and hereby certifies the Settlement Class as follows:

> All persons who were customers of SWX or QES, including any subsidiaries or
> affiliates of SWX or QES engaged in business as Qualified Intermediaries pursuant
> to 26 U.S.C. § 1031, and who suffered loss or damage or allegedly suffered loss or
> damages in any way, directly or indirectly, related to or arising out of (a) the failure
> of SWX or QES, including their subsidiaries or affiliates; or (b) any of the events,
> acts, or conduct alleged in the Master Complaint and Fourth Amended Complaint in
> the action entitled "*In re: Receivership of Southwest Exchange, Inc. and
> Consolidated Litigation,*" Case No.: 07-A-535439-B, pending in the Eighth Judicial
> District Court, Clark County, Nevada, or in the First Amended Complaint in the
> action entitled *In Re: Internal Revenue Service § 1031 Tax Deferred Exchange
> Litigation,*" MDL Docket No. 1878, Case No. 2:07-cv-01394-RCJ-(LRL), pending
> in the United States District Court for the District of Nevada.

3.   Notice of the Settlement Agreement was timely given to all persons

entitled to notice, including the members of the Settlement Class who could be identified with

reasonable effort. The form and method of notifying the members of the Settlement Class of

the terms and conditions of the Settlement Agreement met the requirements of Rule 23 of the

Federal Rules of Civil Procedure, due process, and any other applicable law, constituted the

best notice practicable under the circumstances, and constituted due and sufficient notice to all

persons and entities entitled thereto. Notice of the Settlement Agreement was also provided to

all necessary parties pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) *et

seq.*

///

FINAL ORDER AND JUDGMENT OF DISMISSAL

4.      The Settlement Agreement is approved as fair, reasonable, and adequate, and the parties to the Settlement Agreement (including the Settling Defendants) and the members of the Settlement Class are directed to consummate the Settlement Agreement in accordance with its terms and provisions. The Settling Defendants are hereby directed to make the settlement payment to the Qualified Settlement Fund within the time provided therefor in the Settlement Agreement.

5.      The above entitled action is hereby dismissed with prejudice as against the Settling Defendants and without any other person's costs, expenses or attorneys fees to be paid by the Settling Defendants. All members of the Settlement Class, the Receiver, SWX, QES, the other Receivership Entities, and the Individual Plaintiffs are hereby permanently barred and enjoined from instituting, commencing, or prosecuting any and all released claims (as set forth in the Settlement Agreement) against the Settling Defendants or any of the other released parties, if any, including unknown claims. The released claims (as set forth in the Settlement Agreement) are hereby compromised, settled, released, discharged and dismissed on the merits and with prejudice by virtue of the proceedings herein and this Final Order and Judgment.

6.      To the fullest extent permitted by law, no person, whether or not a party to any of the related actions, including, without limitation, *In re: Receivership of Southwest Exchange, Inc. and Consolidated Litigation,* Case No.: 07-A-535439-B, pending in the Eighth Judicial District Court, Clark County, Nevada, or in the First Amended Complaint in the action entitled *In Re: Internal Revenue Service § 1031 Tax Deferred Exchange Litigation,* MDL Docket No. 1878, Case No. 2:07-cv-01394-RCJ-(LRL), pending in the United States District Court for the District of Nevada., shall be permitted to bring a claim against the Settling Defendants or other persons released by the Settlement Agreement, if any, in any way, directly or indirectly, based on, arising from, referable to, or related to any alleged damages incurred or allegedly incurred, pertaining to or arising from, in any way, directly or indirectly, (a) the failure of SWX or QES, including their subsidiaries or affiliates, or (b) any of the events, acts, or conduct alleged in the Master Complaint and Fourth Amended Complaint in the action

1  entitled *In re: Receivership of Southwest Exchange, Inc. and Consolidated Litigation,* Case No.:

2  07-A-535439-B, pending in the Eighth Judicial District Court, Clark County, Nevada, or in the

3  First Amended Complaint in the action entitled *In Re: Internal Revenue Service § 1031 Tax*

4  *Deferred Exchange Litigation,* MDL Docket No. 1878, Case No. 2:07-cv-01394-RCJ-(LRL),

5  pending in the United States District Court for the District of Nevada.

6        7.    The Court retains jurisdiction over matters relating to the Settlement

7  Agreement, including the administration and enforcement of the Settlement Agreement and this

8  Final Order and Judgment, and including any application for fees and expenses from the

9  Settlement proceeds by Plaintiffs' counsel for securing the Settlement on behalf of members of

10  the Settlement Class and in connection with administering and distributing the Settlement

11  proceeds to the members of the Settlement Class.

12        8.    The Court has determined that there is no just reason for delay in entering

13  this Final Order and Judgment and hereby enters this Final Order and Judgment as a final

14  judgment pursuant to Federal Rule of Civil Procedure 54(b).

16  DATED: 08/03/2010

                                  HONORABLE ROBERT C. JONES
17                                 UNITED STATES DISTRICT JUDGE

# EXHIBIT A

**EXECUTION COPY**

# WAVE V
## Settlement Agreement

1.    **Parties and Definitions.**

    A.    The Parties to this Settlement Agreement ("Agreement") are:

        (i)    "SWX" meaning Southwest Exchange, Inc., also known as Southwest Exchange Corporation, together with its subsidiary and affiliate entities, including without limitation, Arrow 1031 Exchange, Inc., Nevada National Exchange LLC, and Nevada Safe Harbor, Inc. and including all of their interests that may currently be the subject of a receivership.

        (ii)    "QES" meaning Qualified Exchange Services, Inc. together with its subsidiary and affiliate entities, and including all of its interests that may currently be the subject of a receivership.

        (iii)    "Capital Reef" meaning Capital Reef Management Corp. together with its subsidiary and affiliate entities, and including all of its interests that may currently be the subject of a receivership.

        (iv)    "Other Receivership Entities" meaning all entities other than SWX, QES and Capital Reef which were the subject of a Receivership in the Nevada State Court Receivership action as defined in paragraph 2.A on or before the date on which the Receiver in that Receivership executes this Agreement. Attached as Schedule A is a complete list of all such entities.

        (v)    "Settlement Class" meaning:

        a.    All persons who were customers of SWX or QES, including any subsidiaries or affiliates of SWX or QES engaged in business as Qualified Intermediaries pursuant to 26 U.S.C. § 1031, and who suffered loss or damage or allegedly suffered loss or damages in any way, directly or indirectly, related to or arising out of (a) the failure of SWX or QES, including their subsidiaries or affiliates; or (b) any of the events, acts, or conduct alleged in the Master Complaint and Fourth Amended Complaint in the action entitled *In re: Receivership of Southwest Exchange, Inc. and Consolidated Litigation,*" Case No.: 07-A-535439-B, pending in the Eighth Judicial District Court, Clark County, Nevada, or in the First Amended Complaint in the action entitled *In Re: Internal Revenue Service § 1031 Tax Deferred Exchange Litigation,*" MDL Docket No. 1878, Case No. 2:07-cv-01394-RCJ-(LRL), pending in the United States District Court for the District of Nevada.

        b.    "Settlement Class" does not include the "Individual Plaintiffs" as defined in Paragraph 1.A.vi herein.

**EXECUTION COPY**

(vi)    "Individual Plaintiffs" meaning the individuals and entities identified in Schedule B to this Agreement including any plaintiffs who later sign this Agreement pursuant to Paragraph 13.A.

(vii)    "Carolina" meaning Carolina Casualty Company, Inc, its corporate parents and subsidiaries, affiliates, agents, employees, officers, directors, attorneys, managing general underwriters, managing general agents, insurers and reinsurers of each of them, individually and collectively.

(viii)    "RSUI" meaning RSUI Indemnity Company, its corporate parents and subsidiaries, affiliates, agents, employees, officers, directors, attorneys, managing general underwriters, managing general agents, insurers and reinsurers of each of them, individually and collectively.

(ix)    "Individual Insureds" meaning, collectively, any persons insured, or who could claim to be insured under Carolina Policy Number 1706787/1 ("the Carolina Policy") and RSUI Policy Number HS621925 ("the RSUI Policy"), including but not limited to the following persons:

    a.    "D. McGhan" meaning Donald K. McGhan.
    b.    "J. McGhan" meaning Jim J. McGhan.
    c.    "Sperberg" meaning Marc S. Sperberg.
    d.    "Moyes" meaning Thomas R. Moyes.
    e.    "Rogers" meaning Samuel Clay Rogers.
    f.    "Kimmel" meaning Paul R. Kimmel.
    g.    "Davis" meaning Eugene I. Davis.
    h.    "Brown" meaning Mark E. Brown.
    i.    "Forbuss" meaning Robert Forbuss.
    j.    "Hartley" meaning Thomas Y. Hartley.
    k.    "Khan" meaning Ikram Khan.
    l.    "Maloney" meaning Theodore R. Maloney.

(x)    "Additional Settling Parties" meaning the following persons:

    a.    Nikki Pomeroy ("Pomeroy").
    b.    Shirley McGhan ("S. McGhan").

(xi)    "MediCor Unsecured Creditors" meaning the Official Committee (the "Committee") of Unsecured Creditors of MediCor Ltd. and Affiliated Debtors (collectively, the "Debtors") appointed in the MediCor Chapter 11 Proceeding acting in their derivative capacity on behalf of the MediCor Estates (as defined herein) and any successor thereto or any designee thereof and specifically acting for the beneficiaries of the Liquidating Trust (as defined herein).

**EXECUTION COPY**

B.    The Definitions applicable to this Settlement Agreement ("Agreement") are

(i)    "MediCor Estates" meaning the Debtors and their estates created by Section 541 of the Bankruptcy Code upon the commencement of the MediCor Chapter 11 Proceeding.

(ii)    "Releasing Parties" meaning SWX, QES, Capital Reef, any of the Other Receivership Entities, RSUI, Carolina, the Individual Insureds, the members of the Settlement Class, the Individual Plaintiffs, the Additional Settling Parties, and the MediCor Unsecured Creditors.

(iii)    "Qualified Settlement Fund" meaning the settlement fund established by settlement trustee Larry Bertsch for the actions entitled *In re: Receivership of Southwest Exchange, Inc. and Consolidated Litigation,*" Case No.: 07-A-535439-B, pending in the Eighth Judicial District Court, Clark County, Nevada, and *In Re: Internal Revenue Service § 1031 Tax Deferred Exchange Litigation,*" MDL Docket No. 1878, Case No. 2:07-cv-01394-RCJ-(LRL), pending in the United States District Court for the District of Nevada.

(iv)    "MediCor Secured Creditors" meaning non-settling party comprised of Silver Oak Capital, L.L.C.; HFTP Investments, LLC; Promethean I Master, Ltd. (formerly known as Gaia Offshore Master Fund, Ltd.); Promethean II Master, LP; and Portside Growth and Opportunity Fund in connection with the bankruptcy proceeding captioned In re MediCor Ltd., et al., U.S. Bankruptcy Court for the District of Delaware, Case No. 07-10877 (MFW) (the "MediCor Chapter 11 Proceeding").

(v)    "MediCor Secured Creditors Litigation" meaning the lawsuit captioned *Silver Oak Capital, LLC; HFTP Investments, LLC; Promethean I Master, Ltd., f/k/a GAIA Offshore Master Investment Fund, Ltd.; Promethean II Master, L.P.; Portside Opportunity and Growth Fund v. UBS, A.G. d/b/a UBS Investment Bank, UBS Securities, LLC, and UBS Financial Services, Inc.,* pending in the Supreme Court of the State of New York, County of New York, Case No. 603750/08.

(vi)    "MediCor Estate Plan" meaning Chapter 11 Plan of Liquidation of the Debtors, dated December 26, 2008, filed in the MediCor Chapter 11 Proceeding.

(vii)    "Liquidating Trust" meaning the liquidating trust created by and described in Section 7.6 of the MediCor Estate Plan.

(viii)    "Liquidating Trustee" meaning the person or persons appointed by the MediCor Unsecured Creditors as provided in Section 1.64 of the MediCor Estate Plan.

(ix)    The term "days" when used in this Agreement shall mean calendar days, including, and not exclusive of, weekends and holidays.

(x)    "Litigation Defense Trust" meaning the $2.0 million portion of the Settlement Payments to be held in trust by the Litigation Defense Trustee for the payment of defense costs of the Individual Insureds incurred in connection with the defense of any of the

**EXECUTION COPY**

Creditors' Claims (as that term is defined herein). The terms of access to the Litigation Defense Trust by Individual Insureds shall be governed by Paragraph 5.A.iii(b) of this Agreement.

(xi)    "Litigation Defense Trustee" meaning Larry Bertsch, who shall administer the Litigation Defense Trust in accordance with Paragraph 5.A.iii(b) of this Agreement.

**2.    Lawsuits, Settlements and Claims.**

This Agreement is entered into with reference to, among other things, the following lawsuits, settlements and claims:

A.    Action 07-A-535439-B in the Eighth Judicial District Court of the State of Nevada in and for the County of Clark entitled "*In Re: Receivership of Southwest Exchange, Inc. and Consolidated Litigation*," together with all actions and proceedings joined, consolidated, or coordinated with that action. Those lawsuits are collectively defined as the "Nevada State Court Receivership Action."

B.    MDL Docket No. 1878, Case No. 2:07-cv-01394-RCJ-(LRL), pending in the United States District Court for the District of Nevada entitled "*In Re: Internal Revenue Service § 1031 Tax Deferred Exchange Litigation*," together with all actions and proceedings joined, consolidated, or coordinated therein. That lawsuit is defined as the "RICO Class Action."

C.    *Carolina Casualty Insurance Company v. Donald K. McGhan, et al. and RSUI Indemnity Company v. Donald K. McGhan. et al.,* pending in United States District Court, District of Nevada, Case No. 2:07-cv-00949PMP-GWF. That lawsuit is defined as the "Carolina and RSUI Coverage Action."

D.    The settlements and related consent judgments to which any of the Individual Insureds are a party, including, but not limited to: (1) the settlements and consent judgments in the RICO Class Action between: (a) Maloney on the one hand and the Settlement Class on the other hand; and (b) Hartley on the one hand and the Settlement Class on the other hand, as provided in MDL Docket No. 1878, Case No. 2:07-cv-01394-RCJ-(LRL), pending in the United States District Court for the District of Nevada entitled "*In Re: Internal Revenue Service § 1031 Tax Deferred Exchange Litigation*," and (2) the Stipulated Judgment that is to be provided by D. McGhan to the Settlement Class and the Individual Plaintiffs pursuant to Paragraph 5.H. of this Agreement.

E.    Any and all claims and/or potential claims of the MediCor Secured Creditors related to MediCor against the Individual Insureds for which the MediCor Secured Creditors sought to provide notice under the Carolina Policy and/or the RSUI Policy, including, but not limited to matters referenced in the letter dated November 7, 2007 from Paul, Weiss, Rifkind Wharton & Garrison LLP to counsel for certain of the Individual Insureds, a copy of which is attached as Schedule C hereto. Those claims and/or potential claims are defined as the "Creditors' Claims."

F.    Any and all derivative claims and/or potential claims of the MediCor Unsecured Creditors brought on behalf of the MediCor Estates pursuant to a grant of derivative standing for which claims the MediCor Unsecured Creditors sought to provide notice under the Carolina

**EXECUTION COPY**

Policy and/or the RSUI Policy, including, but not limited to matters referenced in the letters dated July 27, 2007 and August 27, 2007 from Blank Rome LLP to counsel for certain Individual Insureds, copies of which are attached as Schedule D hereto. Those derivative claims and/or potential claims are defined as the "Derivative MediCor Estates Claims."

G.    *In re: MediCor Ltd., et. al.*, Case No. 07-10877, pending in the United States Bankruptcy Court for the District of Delaware. This lawsuit is defined as the "MediCor Chapter 11 Proceeding."

**3.    Intent of Agreement.**

This Agreement and the Releases provided herein are intended to resolve litigation arising out of the collapse of SWX and QES and all claims for which insureds under the Carolina Policy and the RSUI Policy (the "Policies") have sought or may seek coverage under the Policies, including a full and complete release of any and all obligations that Carolina and RSUI have or are alleged to have to any insured or other party seeking to enforce the rights of an insured under those policies, or in connection with any handling of claims under those policies or settlement negotiations relating to any such claims.

**4.    Parties Not Being Released.**

The Releases being given by this Agreement are expressly limited to the Releases set forth in paragraphs 6, 7, 8, 9, and 10 hereto and as limited by law, and the Releases shall not apply to or inure to the benefit of any person or entity not expressly identified therein. For the avoidance of doubt, the Releases do not in any way operate to release or waive any claims that the MediCor Estates or the MediCor Unsecured Creditors have or may assert against any persons or entities that provided prepetition professional services to any of the Debtors, including but not limited to any of the Debtor's prepetition accountants and auditors. In addition, the Releases do not in any way operate to release or waive any claims against Pat Byrne ("Byrne"), Snell & Wilmer ("Snell") or Silverstate Bank (FDIC) ("Silverstate").

**5.    Settlement Payments.**

A.    The following payments shall be issued in accordance with the terms of this Agreement as set forth herein:

i.    Carolina shall pay the total sum of $2,348,443.57 to be allocated among (1) the MediCor Unsecured Creditors, (2) the Settlement Class and Individual Plaintiffs, and (3) the Litigation Defense Trust as provided in Paragraph 5.A.iii hereof. The $2,348,443.57 payment reflects Carolina's total settlement contribution of $3,444,000.00 less $795,556.43 already paid to the Individual Insureds as and for legal fees and defense costs, less an additional $200,000.00 in payments to be made to the law firm of Gordon Silver, Ltd. as and for defense costs and legal fees of J. McGhan as described in paragraph 5.B. hereof, less an additional $100,000.00 in payments to be made to the law firm of Martin & Allison, Ltd. as and for defense costs and legal fees of Moyes, Rogers, Kimmel, Davis, Brown, Hartley, Forbuss and Khan as described in Paragraph 5.B. hereof.

**EXECUTION COPY**

  ii. RSUI shall pay the total sum of $2,194,500.00 to be allocated among (1) the MediCor Unsecured Creditors, (2) the Settlement Class and Individual Plaintiffs, and (3) the Litigation Defense Trust as provided in Paragraph 5.A.iii hereof.

  iii. The aggregate sum to be paid by Carolina and RSUI to (1) the MediCor Unsecured Creditors, (2) the Settlement Class and Individual Plaintiffs, and (3) the Litigation Defense Trust shall total $4,542,943.57 (the "Distributed Settlement Amounts") and shall be paid by Carolina and RSUI *pro rata*, according to Carolina's and RSUI's percentage contribution to the Distributed Settlement Amounts, as follows:

  (a) Carolina shall pay $142,159.37 and RSUI shall pay $132,840.63, for a total sum of $275,000.00 to the MediCor Unsecured Creditors by wire payment directly to: (i) an account designated by the MediCor Estates for distribution to the MediCor Unsecured Creditors (if prior to the Effective Date of the MediCor Estate Plan), or (ii) an account designated by the Liquidating Trustee for distribution to the MediCor Unsecured Creditors (if on or subsequent to the Effective Date of the MediCor Estate Plan). Such amount shall be in addition to the $700,000.00 of settlement funds negotiated and agreed with the MediCor Unsecured Creditors to be paid to certain Debtor creditors expressly specified in, and in accordance with, the terms of the pending MediCor Estate Plan, and shall not be subject to any deduction or sharing with the MediCor Secured Creditors or any other party.

  (b) Carolina shall pay $1,066,712.19 and RSUI shall pay $996,787.81, for a total sum of $ 2,063,500.00 to the Litigation Defense Trust by wire payment to an account designated by the Litigation Defense Trustee. The $2,063,500.00 constituting the Litigation Defense Trust for the benefit of the Individual Insureds shall be held in the Southwest Exchange Qualified Settlement Fund until forty-five (45) calendar days after the MediCor Secured Creditors Litigation is dismissed, at which point any funds remaining in the Litigation Defense Trust shall be distributed from the Southwest Exchange Qualified Settlement Fund to the Individual Plaintiffs and Settlement Class members. The Individual Insureds shall only have access to the Litigation Defense Fund for the reimbursement of attorneys fees necessarily incurred in the defense of any Creditors Claims filed in the Medicor Secured Creditors Litigation. The Individual Insureds shall have no right to access money in the Litigation Defense Fund for purposes of indemnification against Creditor Claims, or to satisfy any judgment resulting from any Creditor Claims, or for any reason other than reimbursement of attorneys fees as set forth herein. Application for reimbursement of attorneys fees from the Litigation Defense Fund must be made by submitting detailed legal bills to the Litigation Defense Trustee no later than fifteen (15) calendar days after the MediCor Secured Creditors Litigation is dismissed, and such applications must be resolved no later than forty-five (45) calendar days after the MediCor Secured Creditors Litigation is dismissed, and any funds then remaining in the Litigation Defense Fund shall be distributed from the Southwest Exchange Qualified Settlement Fund to the Individual Plaintiffs and Settlement

**EXECUTION COPY**

Class members. Payments from the Litigation Defense Fund shall be made on a first come, first serve basis and subject to prior approval by the Litigation Defense Trustee and the Honorable Robert C. Jones, presiding district court judge in MDL Docket No. 1878, Case No. 2:07-cv-01394-RCJ-(LRL), United States District Court for the District of Nevada entitled *"In Re: Internal Revenue Service § 1031 Tax Deferred Exchange Litigation."*

      (c)    Carolina shall pay $1,139,572.00 and RSUI shall pay $1,064,871.57, for a total sum of $2,204,443.57, directly to the Qualified Settlement Fund per the instructions of Larry Bertsch for distribution *pro rata* to the Individual Plaintiffs and Settlement Class in accordance with the terms of this Agreement.

    B.    Upon the completion of the payment conditions set forth in Paragraph 12, Carolina shall pay $200,000.00 to the law firm of Gordon Silver, Ltd. as and for defense costs and legal fees incurred by J. McGhan in connection with the lawsuits set forth in Paragraph 2 of this Agreement. Upon the completion of the payment conditions set forth in Paragraph 12, Carolina shall pay $100,000.00 payment to the law firm of Martin & Allison, Ltd. as and for defense costs and legal fees of Moyes, Rogers, Kimmel, Davis, Brown, Hartley, Forbuss and Khan in connection with the lawsuits set forth in Paragraph 2 of this Agreement.

    C.    The Parties to this Agreement agree that the payments described in Paragraph 5.A. and 5.B. shall be deemed to benefit SWX, QES, Capital Reef, the Other Receivership Entities, the Individual Insureds, the Individual Plaintiffs, the Settlement Class, MediCor Estates, and the MediCor Unsecured Creditors, as applicable, regardless of whether or not any portion of the payments described in Paragraph 5.A. and 5.B. is further distributed to any particular member of the Settlement Class, any particular Individual Plaintiff, SWX, QES, Capital Reef, any of the Other Receivership Entities, or any particular member of the constituency represented by the MediCor Unsecured Creditors.

    D.    Pomeroy hereby assigns, transfers, and conveys to Settlement Class and Individual Plaintiffs any and all right, title, and interest she may have to $693,680.66 previously surrendered to the Receiver appointed by the Eighth Judicial District Court in and for Clark County Nevada in connection with the Nevada State Court Receivership Action pursuant to a Confidential Term Sheet dated on or about May 31, 2007. Said funds represent Pomeroy's payment of $411,230.02 in cash and the proceeds from the sale of two properties titled in her name known as the Innisbrook Property and the Veronica Property. In connection with these payments, the Parties to this Agreement agree that the payments described in this Paragraph 5.D. shall be deemed to benefit SWX, QES, Capital Reef, the Other Receivership Entities, Individual Plaintiffs, and the Settlement Class without regard to any future agreements between such persons and entities and/or the orders of any court of competent jurisdiction regarding the distribution or utilization of the funds paid to the Receiver pursuant to the Confidential Term Sheet.

**EXECUTION COPY**

E.     S. McGhan hereby assigns, transfers, and conveys to the Settlement Class and Individual Plaintiffs any and all right, title, and interest she may have to $195,453.62 previously surrendered to the Receiver appointed by the Eighth Judicial District Court in and for Clark County Nevada in connection with the Nevada State Court Receivership Action pursuant to a Confidential Term Sheet dated on or about May 31, 2007. In connection with these payments, the Parties to this Agreement agree that the payments described in this Paragraph 5.E. shall be deemed to benefit SWX, QES, Capital Reef, the Other Receivership Entities, Individual Plaintiffs, and the Settlement Class without regard to any future agreements between such persons and entities and/or the orders of any court of competent jurisdiction regarding the distribution or utilization of the funds paid to the Receiver pursuant to the Confidential Term Sheet.

F.     D. McGhan, J. McGhan, S. McGhan, Pomeroy and entities affiliated with D. McGhan (International Integrated Industries, LLC and MDA Equity Performance, L.P.) currently have a contingent right to receive payments from Arthrocare Corporation pursuant to a Contingent Value Rights Agreement dated as of January 28, 2004. Such distributions, if any, would occur no earlier than January 28, 2010. D. McGhan, J. McGhan, S. McGhan, and Pomeroy are attempting to secure a court order directing that any distributions by Arthrocare pursuant to the Contingent Value Rights Agreement be sent to the Qualified Settlement Fund for further distribution to the Individual Plaintiffs and Settlement Class. Any funds delivered by Arthrocare to the Qualified Settlement Fund shall be deemed partial satisfaction of the judgment to be issued against D. McGhan pursuant to Paragraph 5.H. hereto and shall be allocated pro rata to the Individual Plaintiffs and the Settlement Class. Nothing in this Paragraph, or the releases set forth in Paragraphs 6 and 7, shall limit the rights of the Settlement Class, the Individual Plaintiffs, SWX, QES, Capital Reef, or the Other Receivership Entities to re-file their claims against D. McGhan, J. McGhan, S. McGhan, and/or Pomeroy if, for any reason, the Contingent Value Rights Agreement results in a distribution of Arthrocare funds to D. McGhan, J. McGhan, S. McGhan, and/or Pomeroy and those funds are not turned over to the Qualified Settlement Fund. In this regard, D. McGhan, J. McGhan, S. McGhan, and Pomeroy agree to waive any statute of limitations defense with respect to any claims re-filed pursuant to this Paragraph.

G.     J. McGhan, Pomeroy, and S. McGhan agree to: provide financial statements, certified under oath as to truthfulness and accuracy, disclosing all of their assets and liabilities as of May 31, 2009. They shall further certify under oath that they do not have any other non-exempt assets (other than as set forth on the financial statements) or control over such assets that could be used to satisfy any judgments against them. Copies of the financial statements and certifications are attached hereto as Schedule E. In the event that a court of competent jurisdiction determines that the financial statements are materially false or misleading and/or that other undisclosed non-exempt assets of material value exist as of the date of the financial statements, at the request of the Settlement Class and/or any Individual Plaintiffs, this Agreement may be voided or otherwise set aside and the Settlement Class and/or any Individual Plaintiffs may re-file their claims against J. McGhan, Pomeroy, and/or S. McGhan. The Agreement may only be set aside as to a defalcating party who has filed a materially false or misleading financial statement or otherwise failed to disclose non-exempt assets of material value. In this regard, J. McGhan, Pomeroy, and S. McGhan agree to waive any statute of limitations defense with respect to any claims re-filed pursuant to this Paragraph. Further,

EXECUTION COPY

should a court of competent jurisdiction subsequently determine that J. McGhan, Pomeroy, and/or S. McGhan own or control undisclosed non-exempt assets of material value as of May 31, 2009, such assets shall be forfeited to the Qualified Settlement Fund for further pro-rata distribution to the Individual Plaintiffs and Settlement Class.

H.    D. McGhan agrees to execute Confessions of Judgment (in the form attached hereto as Schedule F) and consents to the entry of Judgments against him in favor of Individual Plaintiffs and Settlement Class in the total amount of $97.4 million plus pre-judgment statutory interest, which shall be allocated between the Individual Plaintiffs and the Settlement Class on a pro rata basis in relation to their losses.

6.    **Releases by SWX, QES, Capital Reef, and the Other Receivership Entities.**

A.    SWX, QES, Capital Reef, and the Other Receivership Entities each releases Carolina, RSUI, the Individual Insureds, and the Additional Settling Parties from all rights, claims or causes of action for damages, equitable or other relief on any theory whatsoever, including, but not limited to, breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, negligence, fraud, breach of fiduciary duty, violations of state or federal statutes and any and all other claims which arise out of or are in any way related to any of the following Released Matters:

i.    The Carolina Policy.

ii.    The RSUI Policy.

iii.    The actual or alleged theft, taking, conversion, or diversion of property or money from SWX, QES, Capital Reef, the Other Receivership Entities, the Individual Plaintiffs or the Settlement Class by anyone including, but not limited to, D. McGhan, Pomeroy, S. McGhan, J. McGhan, Betty Kincaid, Maloney, Sperberg, Peter J. DeMarigny, and Patrick Byrne occurring at any time, whether before, on, or after July 24, 2008.

iv.    The failure of SWX or QES, including their parents, subsidiaries, or affiliates.

v.    All matters that were or could have been alleged by or on behalf of one or more of the Releasing Parties in the Nevada State Court Receivership Action.

vi.    All matters that were or could have been alleged by or on behalf of one or more of the Releasing Parties in the RICO Class Action.

vii.    All matters that were or could have been alleged by or on behalf of one or more of the Releasing Parties in the Carolina and RSUI Coverage Action.

viii.    Any and all claims for coverage and any and all liabilities and obligations claimed under the Carolina Policy and the RSUI Policy and/or in connection with the

**EXECUTION COPY**

handling of claims under those Policies, including any rights or claims assigned by any of the Individual Insureds to any other party, including, but not limited to costs, defense, indemnity or any other payments, extra-contractual, or punitive damages under statute or common law in connection with the handling of claims and/or settlement negotiations by Carolina and/or RSUI, services or benefits under the Carolina Policy and the RSUI Policy or which otherwise relate to those Policies for or with respect to, any and all past, present, potential, or future claims, demands, actions, rights, causes of action, defenses, counterclaims, attorney's fees, costs, expenses, judgments, settlements, liabilities, and damages, of whatever nature, whether known or unknown, foreseen or unforeseen (the "Liabilities"). The Liabilities include, but are not limited to, Liabilities in connection with, in any way relating to, arising out of, directly or indirectly resulting from, or in consequence of the Nevada State Court Receivership Action, the RICO Class Action, the Carolina and RSUI Coverage Action, the Derivative MediCor Estates Claims, or the Creditors' Claims.

        ix.    The acts and omissions of each of the following individuals:

                (1)    D. McGhan
                (2)    Pomeroy
                (3)    J. McGhan
                (4)    S. McGhan
                (5)    Maloney
                (6)    Sperberg
                (7)    Peter J. DeMarigny
                (8)    Betty Kincaid
                (9)    Patrick Byrne
                (10)  The other Individual Insureds

        x.    The investigation, consideration, handling or adjustment of claims made by or on behalf of one or more of the Releasing Parties or any of the customers of SWX or QES to Carolina and/or RSUI in connection with the items set forth in i. through ix. above or of any claims which in any way relate to, arise out of, directly or indirectly result from, or are in consequence of the Nevada State Court Receivership Action, the RICO Class Action, or the Carolina and RSUI Coverage Action. (Items i. through x. shall be referred to herein as the "Released Matters.")

        B.    In giving the Releases described in Paragraph 6, SWX, QES, Capital Reef, and the Other Receivership Entities each acknowledges that they may hereafter discover facts in addition to or different from those they now believe are true and also that one or more courts may enter orders different from those presently anticipated by SWX, QES, Capital Reef, and the Other Receivership Entities, with respect to the claims being released. SWX, QES, Capital Reef, and the Other Receivership Entities each acknowledges that they have taken these possibilities into account, and each expressly assumes the risk of them in entering this Agreement. Further, this Agreement shall remain in effect notwithstanding the discovery or existence of such additional or different facts. This paragraph does not in any way limit the SWX, QES, Capital Reef, and the Other Receivership Entities' rights under Paragraphs 5.F and 12.

**EXECUTION COPY**

C.      SWX, QES, Capital Reef, and the Other Receivership Entities each waives the benefit and protection of Section 1542 of the Civil Code of the State of California, if applicable, or any similar provision under statute or common law in any other jurisdiction that may be applicable. Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.

D.      SWX, QES, Capital Reef, and the Other Receivership Entities acknowledge that they have agreed to release the MediCor Estates of all claims, liabilities, and rights of any sort, whether known or unknown, contingent or fixed, in accordance with and pursuant to the terms and conditions of the separate, stand-alone settlement agreement by and among SWX (including Capital Reef), QES, the Other Receivership Entities, the Receiver, the Settlement Class, the Individual Plaintiffs, the MediCor Estates, the MediCor Secured Creditors, and certain non-debtor entities (the "Receivership Settlement Agreement").

E.      The Releases by SWX, QES, Capital Reef, and the Other Receivership Entities shall not be effective until all of the payments described in Paragraph 5.A. have been made.

F.      Once the Release conditions provided in Paragraph 6.E. above have been met, the Releases shall be effective regardless of whether or not any portion of the Settlement Payments is further distributed to any particular member of the Settlement Class, any particular Individual Plaintiff, SWX, QES, Capital Reef, any of the Other Receivership Entities, or any particular member of the constituency represented by the MediCor Unsecured Creditors.

**7.      Releases by the Settlement Class and the Individual Plaintiffs.**

A.      The Individual Plaintiffs and the Settlement Class each releases Carolina, RSUI, the Individual Insureds (except for D. McGhan who shall provide a Confession of Judgment as set forth in Paragraph 5.H. and except for J. McGhan as set forth in Paragraph 5.G.), and the Additional Settling Parties (except for Pomeroy and S. McGhan as provided in Paragraph 5.G.) from all rights, claims or causes of action for damages, equitable or other relief on any theory whatsoever including, but not limited to, breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, negligence, fraud, breach of fiduciary duty, violations of state or federal statutes and any and all other claims which arise out of or are in any way related to the Released Matters.

B.      In giving the Releases described in Paragraph 7.A., each of the Individual Plaintiffs and each member of the Settlement Class acknowledges that they may hereafter discover facts in addition to or different from those they now believe are true and also that one or more courts may enter orders different from those presently anticipated by the Individual Plaintiffs and the Settlement Class, with the respect to the claims being released. Each Individual Plaintiff and each member of the Settlement Class acknowledges that they have taken these possibilities into account in entering this Agreement, and each expressly assumes the risk

**EXECUTION COPY**

of them in entering this Agreement. Further, this Agreement shall remain in effect notwithstanding the discovery or existence of such additional or different facts. This paragraph does not in any way limit the Settlement Class or Individual Plaintiffs' rights under Paragraphs 5.F, 5.G, 5.H, 11 and 12.

C. Those Individual Plaintiffs and the Settlement Class each waive the benefit and protection of Section 1542 of the Civil Code of the State of California, if applicable, or any similar provision under statute or common law in any other jurisdiction that may be applicable. Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.

D. The Individual Plaintiffs and the Settlement Class each acknowledge that they have agreed to release the MediCor Estates of all claims, liabilities, and rights of any sort, whether known or unknown, contingent or fixed, in accordance with and pursuant to the terms and conditions of the Receivership Settlement Agreement.

E. The Releases by the Individual Plaintiffs and the Settlement Class shall not be effective until all of the payments described in Paragraph 5.A. have been made.

F. Once the Release conditions provided in Paragraph 7.E. above have been met, the Releases shall be effective regardless of whether or not any portion of the Settlement Payments is further distributed to any particular member of the Settlement Class, any particular Individual Plaintiff, SWX, QES, Capital Reef, any of the Other Receivership Entities, or any particular member of the constituency represented by the MediCor Unsecured Creditors.

**8.     Releases by Carolina and RSUI.**

A. Carolina and RSUI each releases one another, SWX, QES, Capital Reef, the Other Receivership Entities, the Individual Insureds, the Settlement Class, the Individual Plaintiffs, Additional Settling Parties, the MediCor Estates, and the MediCor Unsecured Creditors from all rights, claims, or causes of action for damages, equitable or other relief on any theory whatsoever including, but not limited to, breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, negligence, fraud, breach of fiduciary duty, violations of state or federal statutes, and any and all other claims which arise out of or are in any way related to the Released Matters.

B. In giving the Releases described in Paragraph 8, Carolina and RSUI each acknowledges that they may hereafter discover facts in addition to or different from those they now believe are true. Carolina and RSUI each agrees that this Agreement shall remain in effect notwithstanding the discovery or existence of such additional or different facts, as to which Carolina and RSUI expressly assume the risk. This paragraph does not in any way limit Carolina or RSUI's rights under Paragraphs 12 and 13.

**EXECUTION COPY**

C.      Carolina and RSUI each waives the benefit and protection of Section 1542 of the Civil Code of the State of California, if applicable, or any similar provision under statute or common law in any other jurisdiction that may be applicable. Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.

D.      The Releases by Carolina and RSUI shall become effective simultaneously with the releases of Carolina and RSUI by the other Parties to this Agreement, which become effective upon the making of the settlement payments described in Paragraph 5.A (except as provided in Paragraph 10.F. below).

**9.      Releases by the Individual Insureds and Additional Settling Parties.**

A.      Each Individual Insured and each individual Additional Settling Party individually releases Carolina, RSUI, SWX, QES, Capital Reef, the Other Receivership Entities, the Settlement Class, the Individual Plaintiffs, the MediCor Estates, the MediCor Unsecured Creditors, and one another from all rights, claims, or causes of action for damages, equitable or other relief on any theory whatsoever including, but not limited to, breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, negligence, fraud, breach of fiduciary duty, indemnification, violations of state and federal statutes, and any and all other claims which arise out of or are in any way related to: (i) the Released Matters listed in Paragraph 6.A.(i) - (x), or (ii) any and all proofs of claim or any other unsecured claims filed or asserted in the MediCor Chapter 11 Proceeding, including but not limited to Proofs of Claim Nos. 46, 350, 359, 360, 361, 362, 363, 364, 365.

B.      In giving the Releases described in Paragraph 9, the Individual Insureds and the Additional Settling Parties each acknowledges that they may hereafter discover facts in addition to or different from those they now believe are true and also that one or more courts may enter orders different from those presently anticipated by the Individual Insureds, and the Additional Settling Parties, with respect to the claims being released. The Individual Insureds and the Additional Settling Parties each acknowledges that they have taken these possibilities into account, and each expressly assumes the risk of them in entering this Agreement. Further, this Agreement shall remain in effect notwithstanding the discovery or existence of such additional or different facts. This paragraph does not in any way limit the Individual Insureds or Additional Settling Parties' rights under Paragraph 12.

C.      The Individual Insureds and the Additional Settling Parties each waives the benefit and protection of Section 1542 of the Civil Code of the State of California, if applicable, or any similar provision under statute or common law in any other jurisdiction that may be applicable. Section 1542 provides:

Case 2:07-cv-01394-RCJ-GWF   Document 268   Filed 08/03/10   Page 19 of 120
Case 2:07-cv-01394-RCJ-LRL   Document 258-1   Filed 06/23/10   Page 19 of 120
EXECUTION COPY

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.

D.       The Releases by the Individual Insureds and the Additional Settling Parties shall not be effective until all of the payments described in Paragraph 5.A. have been made.

E.       Once the Release conditions provided in Paragraph 9.E. above have been met, the Releases shall be effective regardless of whether or not any portion of the Settlement Payments is further distributed to any particular member of the Settlement Class, any particular Individual Plaintiff, SWX, QES, Capital Reef, any of the Other Receivership Entities, or any particular member of the constituency represented by the MediCor Unsecured Creditors.

F.       In the event the releases of D. McGhan, J. McGhan, S. McGhan, and/or Pomeroy become null and void pursuant to Paragraph 5.F. or 5.G., the releases in this Paragraph 9 shall remain in full force and effect.

## 10.    Releases by MediCor Unsecured Creditors

A.       The MediCor Unsecured Creditors release Carolina, RSUI, and the Individual Insureds from all rights, claims, or causes of action for damages, equitable or other relief on any theory whatsoever including, but not limited to, breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, negligence, fraud, breach of fiduciary duty, violations of state or federal statutes, and any and all other claims which arise out of or are in any way related to the Released Matters.

B.       The Releases being given by the MediCor Unsecured Creditors are limited to those claims, causes of action, or potential claims or causes of action for which, and to those parties against whom, the MediCor Unsecured Creditors have been granted derivative standing by the MediCor Estates to bring MediCor Estate claims or causes of action.

C.       The MediCor Unsecured Creditors acknowledge that the MediCor Estates have agreed to release the Receivership Parties, the Settlement Class, and the Individual Plaintiffs from any estate claims in accordance with and pursuant to the terms and conditions of the Receivership Settlement Agreement and to release the MediCor Secured Creditors from any estate claims in accordance with and pursuant to the terms and conditions of the MediCor Estate Plan. The MediCor Unsecured Creditors further acknowledge that following entry of an order pursuant to Bankruptcy Rule 9019 by the Bankruptcy Court in the MediCor Chapter 11 Proceeding approving the Receivership Settlement Agreement and confirmation and occurrence of the "Effective Date" in respect of the MediCor Estate Plan, the MediCor Unsecured Creditors will be bound by the MediCor Estates' release of the Receivership Entities therein.

D.       In giving the Releases described in Paragraph 10, the MediCor Unsecured Creditors acknowledge that they may hereafter discover facts in addition to or different from those they now believe are true and also that one or more courts may enter orders different from

**EXECUTION COPY**

those presently anticipated by the MediCor Unsecured Creditors, with the respect to the claims being released. The MediCor Unsecured Creditors acknowledge that they have taken these possibilities into account in entering this Agreement, and each expressly assumes the risk of them in entering this Agreement. Further, this Agreement shall remain in effect notwithstanding the discovery or existence of such additional or different facts. This paragraph does not in any way limit the MediCor Unsecured Creditors' rights under Paragraphs 11 and 12.

E.     The MediCor Unsecured Creditors waive the benefit and protection of Section 1542 of the Civil Code of the State of California, if applicable, or any similar provision under statute or common law in any other jurisdiction that may be applicable. Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.

F.     The Releases by the MediCor Unsecured Creditors shall not be effective until: (i) all of the payments described in Paragraph 5.A.iii have been made, and (ii) the MediCor Estate Plan is amended prior to the Effective Date to remove or release any right of the MediCor Secured Creditors to distribution of any portion of the Settlement Payment made to the MediCor Unsecured Creditors pursuant to Paragraph 5.A.iii(a) of this Agreement.

G.     Once the Release conditions provided in Paragraph 10.F. above have been met, the Releases shall be effective regardless of whether or not any portion of the Settlement Payments is further distributed to any particular member of the Settlement Class, any particular Individual Plaintiff, SWX, QES, Capital Reef, any of the Other Receivership Entities, or any particular member of the constituency represented by the MediCor Unsecured Creditors.

**11.     Claims Not Being Released.**

This Agreement does not in any way operate to release or waive any claims against Byrne, Snell, or Silverstate. This Agreement does not in any way operate to release or waive any claims that the MediCor Unsecured Creditors or the MediCor Estates have, or may assert, against any persons or entities that provided prepetition professional services to MediCor Ltd. or its affiliates, including but not limited to MediCor Ltd.'s or its affiliates' prepetition accountants and auditors. The MediCor Unsecured Creditors are not releasing or waiving their respective claims as creditors of MediCor against the MediCor Estates, nor is MediCor releasing or waiving its rights or defenses in connection with such claims. Nevertheless, and notwithstanding the foregoing, nothing in this paragraph modifies, limits, or restricts in any way the full and complete releases being provided to Carolina and/or RSUI pursuant to this Agreement.

**12.     Timing and Manner of Payment.**

A.     Carolina and RSUI (collectively the "Payors") are not required to make the payments described in Paragraph 5.A. until 30 days after all of the following have occurred:

Case 2:07-cv-01394-RCJ-GWF   Document 268   Filed 08/03/10   Page 21 of 120
Case 2:07-cv-01394-RCJ-LRL   Document 258-1   Filed 06/23/10   Page 21 of 120
EXECUTION COPY

i.    The entry of all of the following in the RICO Class Action:

(1)    An Order certifying a Settlement Class the same as defined in Paragraph 1.A.(v). If the court certifies a settlement class using different language, Payors, or any of them, may, within 15 days of receipt of the court's Order, waive this condition. Any such Order(s) certifying a Settlement Class shall be final following appellate review, if any;

(2)    An Order approving this Settlement and barring all claims and suits by or on behalf of:

(a) any of the Releasing Parties; (b) any other person(s) or entity(ies) that are, or may be, Insureds under the Carolina Policy and/or the RSUI Policy; and (c) any person and/or entity that is a party to the Nevada State Receivership Action, the Carolina and RSUI Coverage Action, the RICO Class Action, and/or the Insurance Coverage Class Action and that will remain a party to such action(s) following this Settlement

against

(a) Carolina; (b) RSUI; (c) the Individual Insureds; and (d) the Additional Settling Parities,

which arise out of or are related to in any way any of the Released Matters. Any such Order(s) approving this Settlement and barring claims shall be final following appellate review, if any

ii.    The entry of both of the following in the Nevada State Court Receivership Action:

(1)    An Order authorizing the Receiver in the Nevada State Court Receivership Action to enter into and execute this Agreement and to take such actions as are reasonably necessary to implement it;

(2)    An Order finding the settlement reflected in this Agreement to be in good faith pursuant to NRS 17.245. Any such Order(s) shall be final following appellate review, if any.

iii.    The entry of all of the following in the MediCor Chapter 11 Proceeding:

(1)    An Order approving this Settlement pursuant to Federal Bankruptcy Rule of Procedure 9019;

**EXECUTION COPY**

(2)    An Order granting and confirming the Debtors' consent to the MediCor Unsecured Creditors standing to bring the Derivative MediCor Estates Claims;

(3)    An Order approving the expenditure of proceeds of the Carolina Policy and the RSUI Policy pursuant to this Settlement.

Any such Order(s) shall be final following appellate review, if any.

B.    The parties to this Agreement shall make a good faith effort to submit joint proposed orders with respect to this Settlement. Except where a party has approved the form and content of a proposed order prior to its submission by any other party to a court, each party may file with the applicable court an objection: (i) to any proposed order within 10 days of submission of the proposed order to the court, or (ii) to any order (if materially different from a proposed order) within 10 days after the party receives notice of entry. The sole basis for any such objection to a proposed order shall be that the proposed order is materially inconsistent with the terms of this Agreement or materially affects the legal rights of the objecting party in a manner not contemplated by this Agreement; and the sole basis for any such objection to an order entered by the court shall be that the order is materially different from the proposed order submitted to that court. Any other party to this Agreement shall have no less than 10 days to respond to such objection, after which time all parties shall request a ruling on the objection from the court. In the event that the court upholds the objection or determines that the court cannot resolve the dispute based on the Agreement, then the objecting party may terminate the Agreement upon 10 days notice, during which period all Parties shall negotiate in good faith to resolve the dispute.

C.    Notwithstanding Paragraph 12.A., within 30 days of execution of this Agreement by all parties to this Agreement, each Payor shall deposit the funds to be paid pursuant to Paragraph 5.A into a segregated trust account maintained by Payor's counsel pursuant to Nevada Supreme Court Rule 219 with instructions to the escrow agent to distribute the funds in accordance with and pursuant to Paragraph 5.A upon the occurrence of the conditions described in Paragraph 12.A. The account into which each Payor's payment is deposited shall, due to the amount held and the potential duration of time that it will be held, be deemed to be neither holding a "nominal" amount nor being held for a "short period of time" so as to not be subject to Nevada Supreme Court Rule 217. If, in accordance with Paragraph 13.B., any Payor files a Notice of Termination of this Settlement and any other party objects within 10 days of the filing of such Notice of Termination, the funds in those accounts, including interest earned, shall remain in escrow until a resolution is reached by the parties or by an order of the court. If no party objects to such Notice of Termination within 10 days following its filing in accordance with Paragraph 13.B. hereof, the funds in those accounts, including interest earned, shall be returned to the Payors. If an order of the court is required in order to satisfy the bank that the account is subject to Nevada Supreme Court Rule 219 and not Nevada Supreme Court Rule 217, the parties agree to cooperate in seeking such an order. In the event that, following all appellate

proceedings, the conditions listed in Paragraph 12.A. cannot be satisfied, the funds in the segregated trust accounts, including all interest earned on them, shall be returned to Payors. Counsel for each Payor shall provide to counsel for the Receiver, counsel for the Individual Plaintiffs, counsel for the Settlement Class, and counsel for the MediCor Unsecured Creditors copies of the monthly statements for that Payor's account. Any bank charges associated with any account or taxes owed on interest earned shall be paid out of earnings from that account. Notwithstanding the provisions of Paragraph 18.G., any costs incurred by Payors in connection with the establishment or management of this account are the responsibility of Payors. If all of the conditions specified in paragraph 12.A. are satisfied and no Payor has filed a Notice of Termination pursuant to Paragraph 13.B, the funds in the trust account, including interest earned, will be paid pursuant to Paragraph 5.A of this Agreement. If the date on which payment into the attorney trust account pursuant to Paragraph 12 would be due is less than 45 days before the date set in the RICO Class Action for the final hearing, and appellate review has not been sought in connection with any of the orders described in Paragraph 12.A., Payors may choose to wait to make payment directly to the MediCor Unsecured Creditors, the Litigation Defense Trust, and the Settlement Class and Individual Plaintiffs in accordance with Paragraph 5.A.iii following satisfaction of the conditions listed in Paragraph 12.

13.     **Opt-Outs from Class Action.**

A.     Any person or entity that opts out of the Settlement Class may elect to execute this Agreement within ten days of opting out of the Settlement Class. Such persons or entities acknowledge that Class Counsel and counsel for the Individual Plaintiffs do not waive their right to claim attorney's fees from, and not in addition to, the amounts to be paid by the Payors pursuant to Paragraph 5.A.iii of this Agreement in connection with the recoveries on behalf of persons or entities who execute this Agreement pursuant to this paragraph.

B.     If any member of the Settlement Class opts out of the Settlement Class and has not executed this Agreement, either as a Schedule B Individual Plaintiff or pursuant to paragraph 13.A., Carolina, RSUI, the Individual Insureds and/or the Additional Settling Parties may terminate this Agreement. Any such termination shall be made by the filing of a "Notice of Termination" by the terminator in both the RICO Class Action and the Nevada State Court Receivership Action. The Notice of Termination shall be filed no later than 30 days after the deadline for opt-outs in the RICO Class Action, or within 15 days after notice to the terminator(s) of the last opt-out, whichever is later.

14.     **Dismissal of Actions.**

A.     Within fifteen days following the making of the payments described in Paragraph 5.A., the Individual Plaintiffs shall request that the Court dismiss with prejudice as to Carolina, RSUI, the Individual Insureds (except D. McGhan who shall execute a Confession of Judgment as set forth in Paragraph 5.H. hereof), and the Additional Settling Parties with each party to bear its own costs and attorney's fees, the Nevada State Court Receivership Action including but not limited to the Master Complaint and all joinders to that Master Complaint.

**EXECUTION COPY**

B.      Within fifteen days following the making of the payments described in Paragraph 5.A., SWX, QES, and Capital Reef shall request that the Court in the Nevada State Court Receivership Action dismiss with prejudice all of their claims as to Carolina, RSUI, the Individual Insureds, and the Additional Settling Parties.

C.      Within fifteen days following the making of the payments described in Paragraph 5.A., all parties shall request that the Court dismiss with prejudice as to each and every party, with each party to bear its own costs and attorney's fees, the Carolina and RSUI Coverage Action.

D.      Within fifteen days following the making of the payments described in Paragraph 5.A., the Settlement Class shall request that the Court dismiss with prejudice as to Carolina, RSUI, the Individual Insureds (except D. McGhan who shall execute a Confession of Judgment as set forth in Paragraph 5.H. hereof) and the Additional Settling Parties, with each party to bear its own costs and attorney's fees, the RICO Class Action.

E.      Within fifteen days following the making of the payments described in Paragraph 5.A., each of the Individual Insureds shall withdraw with prejudice all Proofs of Claim made by him in the MediCor Chapter 11 Proceeding, including but not limited to Proofs of Claim Nos. 46, 350, 359, 360, 361, 362, 363, 364, and 365, and the claimants with respect to each such asserted claim or interest shall not be entitled to receive any payments or distributions on account of any such claims in the MediCor Chapter 11 Proceeding

F.      In the event that any party fails to file the necessary papers to achieve a dismissal of any of the lawsuits described above (including all consolidated suits), the Parties agree that a Motion to Dismiss may be brought before the appropriate court on an Order Shortening Time based upon the terms of this Agreement and that all parties will join in that motion and consent to that dismissal.

**15.   No Admission of Liability.**

A.      Neither the fact of this Agreement, nor the releases contained herein, nor the payments described in Paragraph 5.A. are an admission of any type by any of the Parties to this Agreement.  It is understood that Carolina, RSUI, the Individual Insureds and the Additional Settling Parties expressly deny all liability to the other Releasing Parties and to one another. This Agreement represents a compromise of disputed claims.

B.      The parties further agree that none of the motions, correspondence, or argument of any of the parties offered or created in connection with this settlement or motions for any of the Orders described in Paragraph 12.A. shall be used as an admission of fault, responsibility, wrongdoing, or liability on the part of any party in any action or suit.  Nothing in this paragraph is intended to affect the right of the parties to this Agreement to enforce this Agreement.

C.      Except as otherwise required by law or regulation or pursuant to any certification of the Settlement Class, no party to this Agreement or their counsel shall issue any press release with respect to the settlement reflected in this Agreement without giving all other Parties at least

Page 19 of 31

Case 2:07-cv-01394-RCJ-GWF   Document 268   Filed 08/03/10   Page 25 of 120
Case 2:07-cv-01394-RCJ-LRL   Document 258-1   Filed 06/23/10   Page 25 of 120
**EXECUTION COPY**

three business days notice.  Any such notice shall be e-mailed to counsel for each of the Parties.  No such press release(s) shall name or otherwise identify Carolina and RSUI.

### 16.   Ownership of Claims.

A.    The Receiver warrants and represents that SWX, QES, Capital Reef, and the Other Receivership Entities are the sole owners of the rights and claims being released by them and that after February 8, 2007, none of the claims being released by the Receiver on behalf of SWX, QES, Capital Reef, and the Other Receivership Entities has been assigned to any other person or entity.

B.    The Receiver warrants and represents that to his knowledge, there was no assignment prior to February 8, 2007 of any of the rights and claims being released by the Receiver on behalf of SWX, QES, Capital Reef, and the Other Receivership Entities.

C.    The Individual Plaintiffs represent and warrant that they are the sole owners of the rights and claims being released by them and that they have not assigned to any other persons or entities any of the rights or claims being released by them.

D.    The Individual Insureds and Additional Settling Parties represent and warrant that they are the sole owners of the rights and claims being released by them and that they have not assigned to any other persons or entities any of the rights or claims being released by them, with the exception of the assignments of rights and claims against Carolina and RSUI by Hartley and Maloney to the Settlement Class and Individual Plaintiffs, which are to be completely extinguished as to Hartley, Maloney, the Settlement Class and the Individual Plaintiffs by operation of this Agreement.

E.    The Jon and Marie Sorrell Trust Dated May 23, 2001 and SCCAA Holdings, LLC, individually and on behalf of the Settlement Class for which they serve as representative parties represent and warrant that they and the members of the Settlement Class are the sole owners of the rights and claims being released by them and the Settlement Class and that neither they nor any member of the Settlement Class has assigned to any persons or entities any of the rights or claims being released by any of them.

F.    The MediCor Unsecured Creditors represent and warrant that they, acting on behalf of the MediCor Estates, are the sole owners of the derivative estate rights and claims being released by the MediCor Unsecured Creditors and that they have not assigned to any other persons or entities any of the rights or claims being released by them.

G.    If Carolina, RSUI, the Individual Insureds or the Additional Settling Parties learns that any of the Releasing Parties is not the sole owner of the rights and claims being released by such Releasing Party pursuant to this Agreement and/or that any of the Releasing Parties has assigned to any persons or entities any of the rights or claims being released by such Releasing Party pursuant to this Agreement, any of such parties, in their sole discretion may terminate this Settlement by filing a Notice of Termination of Settlement in the manner described in Paragraph 13.B.  The deadline for filing of a Notice of Termination pursuant to this paragraph shall be

**EXECUTION COPY**

seven days prior to the date set in the RICO Class Action for the final hearing regarding approval of this Settlement.

### 17.   Assignment of Claims.

The Individual Insureds and the Additional Settling Parties each individually agrees to assign and hereby assigns to the Settlement Class Plaintiffs and the Individual Plaintiffs any and all claims and/or rights they may have against Snell & Wilmer, Patrick Byrne, Janette Byrne, and each of the Defendants who have been named in but have not reached a settlement in the Nevada State Court Receivership Action, and the RICO Class Action, which arise out of or are in any way related to SWX, QES, or their collapse. Expressly excluded from this assignment are all rights and claims being released by the Individual Insureds and the Additional Settling Parties as part of this Settlement.

### 18.   General Provisions.

A.     The use of singular or plural forms and male or female pronouns is not intended by any of the parties to limit the scope of any release or undertaking given to any of the parties to this Agreement.

B.     This Agreement shall be governed by Nevada Law without giving effect to its choice of law principles.

C.     This Agreement shall not be construed against any party hereto as the drafter and instead shall be construed as if all Parties participated equally in the drafting of the Agreement. Further, the Agreement and its terms shall not be construed against Carolina or RSUI by reason of the fact that they are insurance companies.

D.     This Agreement is made and executed by each party hereto of such party's own free will and in accordance with such party's own judgment and upon advice of counsel. No party has been influenced, coerced, or induced to enter into this Agreement by any improper action by any other party.

E.     Any dispute regarding this Agreement to which the Settlement Class is not a party shall be resolved before the Eighth Judicial District Court of the State of Nevada in and for the County of Clark.

F.     Any dispute regarding this Agreement to which the Settlement Class is a party shall be resolved before the United States District Court for the District of Nevada.

G.     All costs of administration of the Settlement Class and distribution of the funds paid pursuant to Paragraph 5.A. and all income tax or other tax liabilities resulting from that settlement payment shall be borne by SWX, QES, Capital Reef, the Other Receivership Entities, the Individual Plaintiffs, and the Settlement Class in such proportions as they may agree or as a court may order in the future.

H.     Any attorney's fees or costs of suit to which counsel for the Settlement Class may be entitled shall be paid out of the Settlement funds received by the Settlement Class. Carolina, RSUI, the Individual Insureds, the Additional Settling Parties, the MediCor Estates, and/or the MediCor Unsecured Creditors shall have no obligation to make any payment, beyond the payments described in Paragraph 5.A., for attorney's fees, costs of suit, or administrative expenses related to this settlement, incurred by any party.

I.     Any attorney's fees or costs of suit to which counsel for the Individual Plaintiffs may be entitled shall be paid out of the Settlement funds received by the Individual Plaintiffs or pursuant to any agreement between the Individual Plaintiffs and their counsel. Carolina, RSUI, the Individual Insureds, the Additional Settling Parties, the MediCor Estates, and/or the MediCor Unsecured Creditors shall have no obligation to make any payment, beyond the payments described in Paragraph 5.A., for attorney's fees, costs of suit, or administrative expenses related to this settlement.

J.     Any attorney's fees or costs of suit to which counsel for SWX, QES, Capital Reef, and the Other Receivership Entities may be entitled shall be paid out of the Settlement funds received by SWX, QES, Capital Reef, and the Other Receivership Entities. Carolina, RSUI, the Individual Insureds, the Additional Settling Parties, the MediCor Estates, and/or the MediCor Unsecured Creditors shall have no obligation to make any payment, beyond the payments described in Paragraph 5.A., for attorney's fees, costs of suit or administrative expenses related to this settlement.

K.     This Agreement represents and contains the entire agreement and understanding between and among the parties.

L.     This Agreement may only be modified by a written instrument signed by all parties whose rights or obligations are affected by the modification.

M.     This Agreement shall be binding upon, and inure to the benefit of, the heirs, successors, and assigns of the Parties.

N.     Unless the Parties otherwise agree in writing, following the failure of any of the conditions to payment listed in Paragraph 11, the failure of the condition to the Releases by the MediCor Unsecured Creditors provided in Paragraph 10.F(ii), or a termination pursuant to Paragraph 13.B, upon a notice of termination, the Parties shall be restored to their respective positions prior to their agreement in principle to enter into this Agreement, and this Agreement and the Confessions of Judgment described in Paragraph 5.H. shall be null and void. Further, each party agrees that should this Agreement be nullified, voided, or terminated for any reason, any statute of limitations or repose and any equitable doctrines of timing applicable to the Derivative MediCor Estates Claims, including without limitation under 11 U.S.C. § 108 and 546(a), shall be deemed tolled and suspended as to those claims through and including 60 days following the effective date of the termination, nullification, or voiding of this Agreement.

EXECUTION COPY

·O.   Each person signing below on behalf of any of the parties represents and warrants that he or she has full authority to do so. Any party signing pursuant to a Power of Attorney must attach the Power of Attorney to this Agreement.

P. ·   All agreements made and orders entered in any of the lawsuits described in paragraph 2 relating to the confidentiality of information, including Protective Orders, shall be unaffected by and shall survive this Agreement.

Q.   This Agreement may be executed in counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Executed counterparts exchanged in email or facsimile form will have the same force and effect as original executed counterparts.

DATED: 6-24-09

CAROLINA CASUALTY COMPANY, INC.

By _____

Its SENIOR CLAIMS ATTORNEY

DATED: _____

RSUI INDEMNITY COMPANY

By _____

Its _____

## INDIVIDUAL INSUREDS

DATED: _____

_____
Don McGhan, an individual

DATED: _____

_____
Jim McGhan, an individual

DATED: _____

_____
Marc Sperberg, an individual

DATED: _____

_____
Thomas R. Moyes, an individual

DATED: _____

_____
Robert R. Forbuss, an individual

Page 23 of 30

EXECUTION COPY

O.     Each person signing below on behalf of any of the parties represents and warrants that he or she has full authority to do so. Any party signing pursuant to a Power of Attorney must attach the Power of Attorney to this Agreement.

P.     All agreements made and orders entered in any of the lawsuits described in paragraph 2 relating to the confidentiality of information, including Protective Orders, shall be unaffected by and shall survive this Agreement.

Q.     This Agreement may be executed in counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Executed counterparts exchanged in email or facsimile form will have the same force and effect as original executed counterparts.

DATED: _____

CAROLINA CASUALTY COMPANY, INC.

By_____

Its_____

DATED: 1/13/10 _____

RSUI INDEMNITY COMPANY

By _____

Its  Assistant Vice President

### INDIVIDUAL INSUREDS

DATED: _____

Don McGhan, an Individual

DATED: _____

Jim McGhan, an individual

DATED: _____

Marc Sperberg, an individual

DATED: _____

Thomas R. Moyes, an individual

DATED: _____

Robert R. Forbuss, an individual

Page 23 of 30

**EXECUTION COPY**

O.     Each person signing below on behalf of any of the parties represents and warrants that he or she has full authority to do so. Any party signing pursuant to a Power of Attorney must attach the Power of Attorney to this Agreement.

P.     All agreements made and orders entered in any of the lawsuits described in paragraph 2 relating to the confidentiality of information, including Protective Orders, shall be unaffected by and shall survive this Agreement.

Q.     This Agreement may be executed in counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Executed counterparts exchanged in email or facsimile form will have the same force and effect as original executed counterparts.

DATED: _____        CAROLINA CASUALTY COMPANY, INC.

                               By_____

                               Its_____


DATED: _____        RSUI INDEMNITY COMPANY

                               By_____

                               Its_____


                        **INDIVIDUAL INSUREDS**

DATED: _August 29, 2009_       _____
                               Don McGhan, an individual

DATED: _____        _____
                               Jim McGhan, an individual

DATED: _____        _____
                               Marc Sperberg, an individual

DATED: _____        _____
                               Thomas R. Moyes, an individual

DATED: _____        _____
                               Robert R. Forbuss, an individual


                        Page 23 of 30

**EXECUTION COPY**

O.     Each person signing below on behalf of any of the parties represents and warrants that he or she has full authority to do so.  Any party signing pursuant to a Power of Attorney must attach the Power of Attorney to this Agreement.

P.     All agreements made and orders entered in any of the lawsuits described in paragraph 2 relating to the confidentiality of information, including Protective Orders, shall be unaffected by and shall survive this Agreement.

Q.     This Agreement may be executed in counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Executed counterparts exchanged in email or facsimile form will have the same force and effect as original executed counterparts.

DATED: _____          CAROLINA CASUALTY COMPANY, INC.

                                  By_____

                                  Its_____

DATED: _____          RSUI INDEMNITY COMPANY

                                  By_____

                                  Its_____

### INDIVIDUAL INSUREDS

DATED: _____          _____
                                  Don McGhan, an individual

DATED: 7/21/09                     _____
                                  Jim McGhan, an individual

DATED: _____          _____
                                  Marc Sperberg, an individual

DATED: _____          _____
                                  Thomas R. Moyes, an individual

DATED: _____          _____
                                  Robert R. Forbuss, an individual

**EXECUTION COPY**

O.    Each person signing below on behalf of any of the parties represents and warrants that he or she has full authority to do so.  Any party signing pursuant to a Power of Attorney must attach the Power of Attorney to this Agreement.

P.    All agreements made and orders entered in any of the lawsuits described in paragraph 2 relating to the confidentiality of information, including Protective Orders, shall be unaffected by and shall survive this Agreement.

Q.    This Agreement may be executed in counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Executed counterparts exchanged in email or facsimile form will have the same force and effect as original executed counterparts.

DATED: _____          CAROLINA CASUALTY COMPANY, INC.

By_____

Its_____

DATED: _____          RSUI INDEMNITY COMPANY

By_____

Its_____

**INDIVIDUAL INSUREDS**

DATED: _____          _____
                                   Don McGhan, an individual

DATED: _____          _____
                                   Jim McGhan, an individual

DATED: _____          _____
                                   Marc Sperberg, an individual

DATED: _____          _____
                                   Thomas R. Moyes, an individual

DATED: _____          _____
                                   Robert R. Forbuss, an individual

Page 23 of 30

09/01/2009 TUE 21:28 FAX 951 302 0375 Rawshark
Case 2:07-cv-01394-RCJ-GWF Document 268 Filed 08/03/10 Page 33 of 120
Case 2:07-cv-01394-RCJ-LRL Document 258-1 Filed 06/23/10 Page 33 of 120

**EXECUTION COPY**

    O.    Each person signing below on behalf of any of the parties represents and warrants that he or she has full authority to do so. Any party signing pursuant to a Power of Attorney must attach the Power of Attorney to this Agreement.

    P.    All agreements made and orders entered in any of the lawsuits described in paragraph 2 relating to the confidentiality of information, including Protective Orders, shall be unaffected by and shall survive this Agreement.

    Q.    This Agreement may be executed in counterparts. All executed counterparts and each of them shall be deemed to be one and the same Instrument. Executed counterparts exchanged in email or facsimile form will have the same force and effect as original executed counterparts.

DATED: _____

CAROLINA CASUALTY COMPANY, INC.

By_____

Its_____

DATED: _____

RSUI INDEMNITY COMPANY

By_____

Its_____

### INDIVIDUAL INSUREDS

DATED: _____

Don McGhan, an individual

DATED: 7/21/09

Jim McGhan, an individual

DATED: _____

Marc Sperberg, an individual

DATED: 9/14/09

Thomas R. Moyes, an individual

DATED: _____

Robert K. Forbuss, an individual

Page 23 of 30

**EXECUTION COPY**

O.    Each person signing below on behalf of any of the parties represents and warrants that he or she has full authority to do so. Any party signing pursuant to a Power of Attorney must attach the Power of Attorney to this Agreement.

P.    All agreements made and orders entered in any of the lawsuits described in paragraph 2 relating to the confidentiality of information, including Protective Orders, shall be unaffected by and shall survive this Agreement.

Q.    This Agreement may be executed in counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Executed counterparts exchanged in email or facsimile form will have the same force and effect as original executed counterparts.

DATED: _____          CAROLINA CASUALTY COMPANY, INC.

By _____

Its _____

DATED: _____          RSUI INDEMNITY COMPANY

By _____

Its _____

**INDIVIDUAL INSUREDS**

DATED: _August 29, 2009_          _____
                                  Don McGhan, an individual

DATED: _____          _____
                                  Jim McGhan, an individual

DATED: _____          _____
                                  Marc Sperberg, an individual

DATED: _____          _____
                                  Thomas R. Moyes, an individual

DATED: _Sept 18_                 _____
                                  Robert R. Forbuss, an individual

Page 23 of 30

EXECUTION COPY

DATED: _____

_____
Thomas Y. Hartley, an individual

DATED: _____

_____
Eugene I. Davis, an individual

DATED: _____

_____
Samuel Clay Rogers, an individual

DATED: _____

_____
Paul R. Kimmel, an individual

DATED: _____

_____
Mark E. Brown, an individual

DATED: _August 21, 2009_

_____
Theodore Maloney, an individual

DATED: _____

_____
Ikram I. Khan, an individual


### ADDITIONAL SETTLING PARTIES

DATED: _____

_____
Nikki Pomeroy, an individual

DATED: _____

_____
Shirley McGhan, an individual

EXECUTION COPY

DATED: _____

_____
Thomas Y. Hartley, an individual

DATED: _____

_____
Eugene I. Davis, an individual

DATED: _____

_____
Samuel Clay Rogers, an individual

DATED: _____

_____
Paul R. Kimmel, an individual

DATED: _____

_____
Mark E. Brown, an individual

DATED: _____

_____
Theodore Maloney, an individual

DATED: _____

_____
Ikram I. Khan, an individual


## ADDITIONAL SETTLING PARTIES

DATED: _____

_____
Nikki Pomeroy, an individual

DATED: _____

_____
Shirley McGhan, an individual

EXECUTION COPY

DATED: _____        _____
                                  Thomas Y. Hartley, an individual


DATED: _____        _____
                                  Eugene I. Davis, an individual

DATED: _____        _____
                                  Samuel Clay Rogers, an individual


DATED: _____        _____
                                  Paul R. Kimmel, an individual


DATED: _____        _____
                                  Mark E. Brown, an individual


DATED: _____        _____
                                  Theodore Maloney, an individual


DATED: _____        _____
                                  Ikram I. Khan, an individual


## ADDITIONAL SETTLING PARTIES

DATED: _____        _____
                                  Nikki Pomeroy, an individual


DATED: _____        _____
                                  Shirley McGhan, an individual

Page 24 of 30

DATED: _____        _____
                                Thomas Y. Hartley, an individual


DATED: _____        _____
                                Eugene I. Davis, an individual

DATED: _____        _____
                                Samuel Clay Rogers, an individual

DATED: 11/20/2009               *Paul R. Kimmel*
                                _____
                                Paul R. Kimmel, an individual

DATED: _____        _____
                                Mark E. Brown, an individual

DATED: _____        _____
                                Theodore Maloney, an individual

DATED: _____        _____
                                Ikram I. Khan, an individual


## ADDITIONAL SETTLING PARTIES

DATED: _____        _____
                                Nikki Pomeroy, an individual

DATED: _____        _____
                                Shirley McGhan, an individual

Page 24 of 30

EXECUTION COPY

DATED: _____

_____
Thomas Y. Hartley, an individual

DATED: _____

_____
Eugene I. Davis, an individual

DATED: _____

_____
Samuel Clay Rogers, an individual

DATED: _____

_____
Paul R. Kimmel, an individual

DATED: 9/21/09

_____
Mark E. Brown, an individual

DATED: _____

_____
Theodore Maloney, an individual

DATED: _____

_____
Ikram I. Khan, an individual

## ADDITIONAL SETTLING PARTIES

DATED: _____

_____
Nikki Pomeroy, an individual

DATED: 8/29/09

_____
Shirley McGhan, an individual

Page 24 of 30

EXECUTION COPY

DATED: _____          _____
                                Thomas Y. Hartley, an individual

DATED: _____          _____
                                Eugene I. Davis, an individual

DATED: _____          _____
                                Samuel Clay Rogers, an individual

DATED: _____          _____
                                Paul R. Kimmel, an individual

DATED: _____          _____
                                Mark E. Brown, an individual

DATED: _August 21, 2009_        *Theodore R Maloney*
                                Theodore Maloney, an individual

DATED: _Sep. 21, 2009_          _____
                                Ikram I. Khan, an individual

ADDITIONAL SETTLING PARTIES

DATED: _____          _____
                                Nikki Pomeroy, an individual

DATED: _____          _____
                                Shirley McGhan, an individual

Page 24 of 30

**EXECUTION COPY**

DATED: _____

_____
Thomas Y. Hartley, an individual


DATED: _____

_____
Eugene I. Davis, an individual


DATED: _____

_____
Samuel Clay Rogers, an individual


DATED: _____

_____
Paul R. Kimmel, an individual


DATED: _____

_____
Mark E. Brown, an individual


DATED: _____

_____
Theodore Maloney, an individual


DATED: _____

_____
Ikram I. Khan, an individual


**ADDITIONAL SETTLING PARTIES**

DATED: __7|17|09__

_____
Nikki Pomeroy, an individual


DATED: _____

_____
Shirley McGhan, an individual

**EXECUTION COPY**

DATED: _____          _____
                                Thomas Y. Hartley, an individual

DATED: _____          _____
                                Eugene I. Davis, an individual

DATED: _____          _____
                                Samuel Clay Rogers, an individual

DATED: _____          _____
                                Paul R. Kimmel, an individual

DATED: _____          _____
                                Mark E. Brown, an individual

DATED: _____          _____
                                Theodore Maloney, an individual

DATED: _____          _____
                                Ikram I. Khan, an individual


### ADDITIONAL SETTLING PARTIES

DATED: _____          _____
                                Nikki Pomeroy, an individual

DATED: 8/29/09                   _____
                                Shirley McGhan, an individual


Page 24 of 30

EXECUTION COPY

## RECEIVER AND RECEIVERSHIP ENTITIES

DATED: 10/20/2009

_____
Larry Bertsch, as Receiver and Litigation
Defense Trustee

DATED: 10/20/2009

SOUTHWEST EXCHANGE, INC.

By _____
Larry Bertsch
Its Court-Appointed Receiver

DATED: 10/20/2009

QUALIFIED EXCHANGE SERVICES

By _____
Larry Bertsch
Its Court-Appointed Receiver

DATED: 10/20/2009

CAPITAL REEF MANAGEMENT CORP.

By _____
Larry Bertsch
Its Court-Appointed Receiver

DATED: 10/20/2009

All Other Receivership Entities in Action
07-A-535439-B and consolidated Actions as
of July 24, 2008, as set forth in Schedule A
hereto.

By _____
Larry Bertsch
Court-Appointed Receiver

Page 25 of 30

EXECUTION COPY

### INDIVIDUAL PLAINTIFFS

DATED: 8/24/2009

NAPA VALLEY I, LLC

By _____
Its _____

DATED: 8/21/2009

NAPA VALLEY II, LLC

By _____
Its _MEMBER_____

DATED: _____

P&D KELESIS, LLC

By _____
Its _____

DATED: _____

_____
Randy Char, an individual

DATED: _____

_____
Wayne C. Albritton, an individual

DATED: _____

_____
Greta Albritton, an individual

DATED: _____

_____
Michael A. Micone, an individual

DATED: _____

_____
Kerstan Micone, an individual

DATED: _____

_____
Michael McCormick, an individual

DATED: _____

_____
Deborah McCormick, an individual

DATED: _____

_____
Larry G. Wallace, Jr., an individual

DATED: _____

_____
William K. Reeser, an individual

Page 26 of 30

EXECUTION COPY

INDIVIDUAL PLAINTIFFS

DATED: _____            NAPA VALLEY I, LLC

                                    By_____

                                    Its_____

DATED: _8/21/2009___  ·             NAPA VALLEY II, LLC

                                    By_____

                                    Its___MEMBER_____

DATED: _____            P&D KELESIS, LLC

                                    By_____

                                    Its_____

DATED: _____            _____
                                    Randy Char, an individual

DATED: _____            _____
                                    Wayne C. Albritton, an individual

DATED: _____            _____
                                    Greta Albritton, an individual

DATED: _____            _____
                                    Michael A. Micone, an individual

DATED: _____            _____
                                    Kerstan Micone, an individual

DATED: _____            _____
                                    Michael McCormick, an individual

DATED: _____            _____
                                    Deborah McCormick, an individual

DATED: _____            _____
                                    Larry G. Wallace, Jr., an individual

DATED: _____            _____
                                    William K. Reeser, an individual

**EXECUTION COPY**

## INDIVIDUAL PLAINTIFFS

DATED: _____          NAPA VALLEY I, LLC

                                  By_____
                                  Its_____

DATED: _____          NAPA VALLEY II, LLC

                                  By_____
                                  Its_____

DATED: _____          P&D KELESIS, LLC

                                  By_____
                                  Its_____

DATED: _____          _____
                                  Randy Char, an individual

DATED: _____          _____
                                  Wayne C. Albritton, an individual

DATED: _____          _____
                                  Greta Albritton, an individual

DATED: _____          _____
                                  Michael A. Micone, an individual

DATED: _____          _____
                                  Kerstan Micone, an individual

DATED: _____          _____
                                  Michael McCormick, an individual

DATED: _____          _____
                                  Deborah McCormick, an individual

DATED: _____          _____
                                  Larry G. Wallace, Jr., an individual

DATED: _____          _____
                                  William K. Reeser, an individual

**EXECUTION COPY**

## INDIVIDUAL PLAINTIFFS

DATED: _____     NAPA VALLEY I, LLC

By_____

Its_____

DATED: _____     NAPA VALLEY II, LLC

By_____

Its_____

DATED: _____     P&D KELESIS, LLC

By_____

Its_____

DATED: _8/18/89_____     _Randy (signature)_____
Randy Char, an individual

DATED: _____     _____
Wayne C. Albritton, an individual

DATED: _____     _____
Greta Albritton, an individual

DATED: _____     _____
Michael A. Micone, an individual

DATED: _____     _____
Kerstan Micone, an individual

DATED: _____     _____
Michael McCormick, an individual

DATED: _____     _____
Deborah McCormick, an individual

DATED: _____     _____
Larry G. Wallace, Jr., an individual

DATED: _____     _____
William K. Reeser, an individual

Page 26 of 30

Jun 19 09 09:11p     Greta Albritton or Wayne    760 327-1162          P.2

EXECUTION COPY

INDIVIDUAL PLAINTIFFS

DATED: _____          NAPA VALLEY I, LLC

                                 By_____
                                 Its_____

DATED: _____          NAPA VALLEY II, LLC

                                 By_____
                                 Its_____

DATED: _____          P&D KELESIS, LLC

                                 By_____
                                 Its_____

DATED: _____          _____
                                 Randy Chai, an individual

DATED: 6/19/09                   _____
                                 Wayne C. Albritton, an individual

DATED: 6/19/09                   _____
                                 Greta Albritton, an individual

DATED: _____          _____
                                 Michael A. Micone, an individual

DATED: _____          _____
                                 Kersten Micone, an individual

DATED: _____          _____
                                 Michael McCormick, an individual

DATED: _____          _____
                                 Deborah McCormick, an individual

DATED: _____          _____
                                 Larry G. Wallace, Jr., an individual

DATED: _____          _____
                                 William K. Reeser, an individual

                        Page 26 of 30

EXECUTION COPY

## INDIVIDUAL PLAINTIFFS

DATED: _____        NAPA VALLEY I, LLC

                              By_____
                              Its_____

DATED: _____        NAPA VALLEY II, LLC

                              By_____
                              Its_____

DATED: _____        P&D KELESIS, LLC

                              By_____
                              Its_____

DATED: _____        _____
                              Randy Char, an individual

DATED: _____        _____
                              Wayne C. Albritton, an individual

DATED: _____        _____
                              Greta Albritton, an individual

DATED: _____        _____
                              Michael A. Micone, an individual

DATED: _____        _____
                              Kerstan Micone, an individual

DATED: _____        _____
                              Michael McCormick, an individual

DATED: _____        _____
                              Deborah McCormick, an individual

DATED: _____        _____
                              Larry G. Wallace, Jr., an individual

DATED: 7-21-09                _____
                              William K. Reeser, an individual

Page 26 of 30

EXECUTION COPY

### INDIVIDUAL PLAINTIFFS

DATED: _____ NAPA VALLEY I, LLC

By_____

Its_____

DATED: _____ NAPA VALLEY II, LLC

By_____

Its_____

DATED: _____ P&D KELESIS, LLC

By_____

Its_____

DATED: _____

_____
Randy Char, an individual

DATED: _____

_____
Wayne C. Albritton, an individual

DATED: _____

_____
Greta Albritton, an individual

DATED: _____

_____
Michael A. Micone, an individual

DATED: _____

_____
Kerstan Micone, an individual

DATED: 8/26/9

_____
Michael McCormick, an individual

DATED: 8/26/9

_____
Deborah McCormick, an individual

DATED: _____

_____
Larry G. Wallace, Jr., an individual

DATED: _____

_____
William K. Reeser, an individual

**EXECUTION COPY**

DATED: _____          4 EVER ACES, INC.

                                 By _____

                                 Its _____

DATED: _____          TIC-PRATT 17, LLC

                                 By _____

                                 Its _____

DATED: _____          BRIGITE LAND MANAGEMENT, LLC

                                 By _____

                                 Its _____

DATED: _____          ERIC G. TARR I TRUST DATED MAY 4,
                                 1990

                                 By _____
                                    Eric G. Tarr, Trustee

DATED: _____          D&D INVESTMENT CO.

                                 By _____

                                 Its _____

DATED: _____          HARBOR INVESTMENT GROUP

                                 By _____

                                 Its _____

DATED: _____          MELDRUM FAMILY TRUST

                                 By _____

                                 Its _____

**EXECUTION COPY**

DATED: _____

4 EVER ACES, INC.

By_____

Its_____


DATED: 6/29/09

TIC-PRATT 17, LLC

By TIC-Pratt 17, LLC/Jack D Close trust #404

Its Jack Delby Trustee


DATED: _____

BRIGITE LAND MANAGEMENT, LLC

By_____

Its_____


DATED: _____

ERIC G. TARR I TRUST DATED MAY 4, 1990


By_____
　　Eric G. Tarr, Trustee


DATED: _____

D&D INVESTMENT CO.

By_____

Its_____


DATED: _____

HARBOR INVESTMENT GROUP

By_____

Its_____


DATED: _____

MELDRUM FAMILY TRUST

By_____

Its_____


Page 27 of 30

06/22/2009 16:35 FAX 7025664648          GIGI MANAGEMENT CO. INC                    ☑002

EXECUTION COPY

DATED: _____          4 EVER ACES, INC.

                                By_____
                                Its_____

DATED: _____          TIC-PRATT 17, LLC

                                By_____
                                Its_____

DATED: 6/21/09                  BRIGITE LAND MANAGEMENT, LLC

                                By _Eric G Tarr_____
                                Its _PRESIDENT_____

DATED: 6/21/09                  ERIC G. TARR I TRUST DATED MAY 4,
                                1990

                                By _Eric A Tarr_ TRUSTEE
                                   Eric G. Tarr, Trustee

DATED: _____          D&D INVESTMENT CO.

                                By_____
                                Its_____

DATED: 7-21-09                  HARBOR INVESTMENT GROUP

                                By_____
                                Its _MANAGING MEMBER_____

DATED: _____          MELDRUM FAMILY TRUST

                                By_____
                                Its_____

Page 27 of 30

EXECUTION COPY

DATED: _____      4EVER ACES, INC. _~Howard R. Simpson_

By _____

Its _____ _Wammer_

DATED: _____      TIC-PRATT 17, LLC

By_____

Its_____

DATED: _____      BRIGITE LAND MANAGEMENT, LLC

By_____

Its_____

DATED: _____      ERIC G. FARR I TRUST DATED MAY 4, 1990

By_____
   Eric G. Farr, Trustee

DATED: _6/26/09_            D&D INVESTMENT CO.

By _Will W Durb__

Its _Gen Partner_

DATED: _____      HARBOR INVESTMENT GROUP

By_____

Its_____

DATED: _____      MELDRUM FAMILY TRUST

By_____

Its_____

Page 27 of 30

**EXECUTION COPY**

DATED: _____          4 EVER ACES, INC.

                                By _____

                                Its _____


DATED: _____          TIC-PRATT 17, LLC

                                By_____

                                Its_____


DATED: _____          BRIGITE LAND MANAGEMENT, LLC

                                By_____

                                Its_____


DATED: _____          ERIC G. TARR I TRUST DATED MAY 4,
                                1990


                                By_____
                                   Eric G. Tarr, Trustee


DATED: _____          D&D INVESTMENT CO.

                                By_____

                                Its_____


DATED: _____          HARBOR INVESTMENT GROUP

                                By_____

                                Its_____


DATED: 8-28-09                  MELDRUM FAMILY TRUST

                                By _____
                                Its Trustee

EXECUTION COPY

DATED: _____          4 EVER ACES, INC. *Leonard B. Sharpin*

                                 By _____

                                 Its _____  *Chairman*

DATED: _____          TIC-PRATT 17, LLC

                                 By _____

                                 Its _____

DATED: _____          BRIGITE LAND MANAGEMENT, LLC

                                 By _____

                                 Its _____

DATED: _____          ERIC G. TARR I TRUST DATED MAY 4, 1990

                                 By _____
                                   Eric G. Tarr, Trustee

DATED: 6/26/09                   D&D INVESTMENT CO.

                                 By _____

                                 Its _____

DATED: _____          HARBOR INVESTMENT GROUP

                                 By _____

                                 Its _____

DATED: _____          MELDRUM FAMILY TRUST

                                 By _____

                                 Its _____

EXECUTION COPY

DATED: _8/27/2009_

~~CAMPBELL TRUST~~

By _____ Trustee of The Gerald B

Its _Campbell Trust U/A/D_ and personal
representative of Gerald B. Campbell

SETTLEMENT CLASS

DATED: _____

THE JON AND MARIE SORRELL
TRUST DATED MAY 23, 2001,
individually and on behalf of the Settlement
Class for which it serves as representative
party

By_____

Its Trustee

DATED: _____

SCCAA HOLDINGS, LLC, individually
and on behalf of the Settlement Class for
which it serves as representative party

By_____

Its_____

DATED: _8/14/09_

S&V PROPERTIES

By_____

Its_ Vice President_

DATED: _8/14/09_

SCARONI PROPERTIES

By_____

Its_ Vice President_

ATTN: SUZETTE

Case 2:07-cv-01394-RCJ-GWF   Document 268   Filed 08/03/10   Page 58 of 120
Case 2:07-cv-01394-RCJ-LRL   Document 258-1   Filed 03/25/10   Page 58 of 120

DATED: _____          CAMPBELL TRUST

                                 By_____

                                 Its_____


## SETTLEMENT CLASS

DATED: July 20, 2009             THE JON AND MARIE SORRELL
                                 TRUST DATED MAY 23, 2001,
                                 individually and on behalf of the Settlement
                                 Class for which it serves as representative
                                 party

                                 By_____

                                 Its Trustee


DATED: _____          SCCAA HOLDINGS, LLC, individually
                                 and on behalf of the Settlement Class for
                                 which it serves as representative party

                                 By_____

                                 Its_____


DATED: _____          S&V PROPERTIES

                                 By_____

                                 Its_____


DATED: _____          SCARONI PROPERTIES

                                 By_____

                                 Its_____


Page 28 of 30

DATED: _____

CAMPBELL TRUST

By_____

Its_____


**SETTLEMENT CLASS**

DATED: _____

THE JON AND MARIE SORRELL
TRUST DATED MAY 23, 2001,
individually and on behalf of the Settlement
Class for which it serves as representative
party

By_____

Its Trustee


DATED: 8|14|09

SCCAA HOLDINGS, LLC, individually
and on behalf of the Settlement Class for
which it serves as representative party

By _Marsha Slotten_____

Its _Managing Member_____


DATED: _____

S&V PROPERTIES

By_____

Its_____


DATED: _____

SCARONI PROPERTIES

By_____

Its_____


Page 28 of 30

**EXECUTION COPY**

DATED: _____             CAMPBELL TRUST

                                   By_____

                                   Its_____


## SETTLEMENT CLASS

DATED: _____             THE JON AND MARIE SORRELL
                                   TRUST DATED MAY 23, 2001,
                                   individually and on behalf of the Settlement
                                   Class for which it serves as representative
                                   party


                                   By_____

                                         Its Trustee


DATED: _____             SCCAA HOLDINGS, LLC, individually
                                   and on behalf of the Settlement Class for
                                   which it serves as representative party

                                   By_____

                                   Its_____


DATED: 8/14/09                     S&V PROPERTIES

                                   By_____

                                   Its   Vice President


DATED: 8/14/09                     SCARONI PROPERTIES

                                   By_____

                                   Its   Vice President


Page 28 of 30

EXECUTION COPY

DATED: 07/19/07

THE CIERNIA REVOCABLE TRUST
DATED OCTOBER 28, 1983

By _____

Its Trustee

DATED: _____

C'NC PROPERTIES

By _____

Its _____

DATED: _____

SUZANN MOHR TRUST

By _____

Its Trustee

DATED: _____

_____
Daniel R. Miller, an individual

DATED: _____

_____
Anthony Sakay, an individual

DATED: _____

_____
Becky Sakay, an individual

DATED: _____

_____
Charles Haldeman, an individual

DATED: _____

_____
Sandra Haldeman, an individual

DATED: _____

_____
Michael Tracy Collins, an individual

DATED: _____

_____
Jeffrey Bowen, an individual

DATED: _____

_____
Neil Dutson, an individual

EXECUTION COPY

DATED: _____          THE CIERNIA REVOCABLE TRUST
                                DATED OCTOBER 28, 1983


                                By_____

                                     Its Trustee


DATED: ___8-1-09___             C'NC PROPERTIES

                                By____KClegg_____
                                Its __Managing Member_____


DATED: _____          SUZANN MOHR TRUST


                                By_____

                                     Its Trustee


DATED: _____          _____
                                Daniel R. Miller, an individual

DATED: _____          _____
                                Anthony Sakay, an individual

DATED: _____          _____
                                Becky Sakay, an individual

DATED: _____          _____
                                Charles Haldeman, an individual

DATED: _____          _____
                                Sandra Haldeman, an individual

DATED: _____          _____
                                Michael Tracy Collins, an individual

DATED: _____          _____
                                Jeffrey Bowen, an individual

DATED: _____          _____
                                Neil Dutson, an individual

DATED: _____

THE CIERNIA REVOCABLE TRUST
DATED OCTOBER 28, 1983

By_____

Its Trustee

DATED: _____

C'NC PROPERTIES

By_____

Its_____

DATED: 8-14-09

SUZANN MOHR TRUST

By_____

Its Trustee

DATED: _____

_____
Daniel R. Miller, an individual

DATED: _____

_____
Anthony Sakay, an individual

DATED: _____

_____
Becky Sakay, an individual

DATED: _____

_____
Charles Haldeman, an individual

DATED: _____

_____
Sandra Haldeman, an individual

DATED: _____

_____
Michael Tracy Collins, an individual

DATED: _____

_____
Jeffrey Bowen, an individual

DATED: _____

_____
Neil Dutson, an individual

Page 29 of 30

DATED: _____

THE CIERNIA REVOCABLE TRUST
DATED OCTOBER 28, 1983


By_____

    Its Trustee


DATED: _____

C'NC PROPERTIES

By_____
Its_____


DATED: _____

SUZANN MOHR TRUST


By_____

    Its Trustee


DATED: _____

_____
Daniel R. Miller, an individual


DATED: _____

_____
Anthony Sakay, an individual


DATED: _____

_____
Becky Sakay, an individual


DATED: _____

_____
Charles Haldeman, an individual


DATED: _____

_____
Sandra Haldeman, an individual


DATED: _____

_____
Michael Tracy Collins, an individual


DATED: _____

_____
Jeffrey Bowen, an individual


DATED: _____

_____
Neil Dutson, an individual

DATED: _____

THE CIERNIA REVOCABLE TRUST
DATED OCTOBER 28, 1983


By_____

    Its Trustee


DATED: _____

C'NC PROPERTIES

By_____

Its_____


DATED: _____

SUZANN MOHR TRUST


By_____

    Its Trustee


DATED: _____

_____
Daniel R. Miller, an individual

DATED: 8/14/09

*Anthony R Sakay*
Anthony Sakay, an individual

DATED: 8/14/09

*Becky Sakay*
Becky Sakay, an individual

DATED: _____

_____
Charles Haldeman, an individual

DATED: _____

_____
Sandra Haldeman, an individual

DATED: _____

_____
Michael Tracy Collins, an individual

DATED: _____

_____
Jeffrey Bowen, an individual

DATED: _____

_____
Neil Dutson, an individual


Page 29 of 30

EXECUTION COPY

DATED: _____          THE CIERNIA REVOCABLE TRUST
                                 DATED OCTOBER 28, 1983

                                 By_____

                                     Its Trustee

DATED: _____          C*NC PROPERTIES

                                 By_____
                                 Its_____.

DATED: _____          SUZANN MOHR TRUST

                                 By_____

                                     Its Trustee

DATED: _____          _____
                                 Daniel R. Miller, an individual

DATED: _____          _____
                                 Anthony Sakay, an individual

DATED: _____          _____
                                 Becky Sakay, an individual

DATED: 8/18/09                   _____
                                 Charles Haldeman, an individual

DATED: 8/18/09                   Sandra Haldeman
                                 Sandra Haldeman, an individual

DATED: _____          _____
                                 Michael Tracy Collins, an individual

DATED: _____          _____
                                 Jeffrey Bowen, an individual

DATED: _____          _____
                                 Neil Dutson, an individual

                    Page 29 of 30

**EXECUTION COPY**

DATED: _____     THE CIERNIA REVOCABLE TRUST
DATED OCTOBER 28, 1983

By_____

Its Trustee

DATED: _____     C'NC PROPERTIES

By_____

Its__ _____

DATED: _____     SUZANN MOHR TRUST

By_____

Its Trustee

DATED: _____
_____
Daniel R. Miller, an individual

DATED: _____
_____
Anthony Sakay, an individual

DATED: _____
_____
Becky Sakay, an individual

DATED: _____
_____
Charles Haldeman, an individual

DATED: _____
_____
Sandra Haldeman, an individual

DATED: _____
_____
Michael Tracy Collins, an individual

DATED: _____
_____
Jeffrey Bowen, an individual

DATED: _____
_____
Neil Dutson, an individual

Page 29 of 30

DATED: _____

THE CIERNIA REVOCABLE TRUST
DATED OCTOBER 28, 1983


By_____

  Its Trustee


DATED: _____

C'NC PROPERTIES

By_____

Its_____.


DATED: _____

SUZANN MOHR TRUST


By_____

  Its Trustee


DATED: _____

_____
Daniel R. Miller, an individual


DATED: _____

_____
Anthony Sakay, an individual


DATED: _____

_____
Becky Sakay, an individual


DATED: _____

_____
Charles Haldeman, an individual


DATED: _____

_____
Sandra Haldeman, an individual


DATED: _____

_____
Michael Tracy Collins, an individual


DATED: _____

_____
Jeffrey Bowen, an individual


DATED: _____

_____
Neil Dutson, an individual

EXECUTION COPY

DATED: _____         THE CIERNIA REVOCABLE TRUST
                                 DATED OCTOBER 28, 1983


                                 By_____

                                    Its Trustee


DATED: _____         C'NC PROPERTIES

                                 By_____
                                 Its_____


DATED: _____         SUZANN MOHR TRUST


                                 By_____

                                    Its Trustee


DATED: _____         _____
                                 Daniel R. Miller, an individual

DATED: _____         _____
                                 Anthony Sakay, an individual

DATED: _____         _____
                                 Becky Sakay, an individual

DATED: _____         _____
                                 Charles Haldeman, an individual

DATED: _____         _____
                                 Sandra Haldeman, an individual

DATED: _____         _____
                                 Michael Tracy Collins, an individual

DATED: _____         _____
                                 Jeffrey Bowen, an individual

DATED: 8-17-09                   _____
                                 Neil Dutson, an individual

                                 Page 29 of 30

DATED: _____                    _____
                                            Ann Datson, an individual

DATED: _____                    _____
                                            Donna Eaton, an individual


### MEDICOR UNSECURED CREDITORS


DATED: _____                    THE OFFICIAL COMMITTEE OF
                                            UNSECURED CREDITORS OF
                                            MEDICOR, LTD. and AFFILIATED
                                            DEBTORS

                                            By_____

                                                 Its Chairman


Page 30 of 30

DATED: _____

DATED: 8/14/09

Ann Dutson, an individual

Donna Eaton, an individual

## MEDICOR UNSECURED CREDITORS

DATED: 23 July 2009

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF
MEDICOR, LTD. and AFFILIATED
DEBTORS

By _____

Its Chairman

FAX 805-965-0329

EXECUTION COPY

DATED: _____          Ann Dutson, an individual

DATED: 8/14/09                  Donna Eaton, an individual

## MEDICOR UNSECURED CREDITORS

DATED: _____          THE OFFICIAL COMMITTEE OF
                                UNSECURED CREDITORS OF
                                MEDICOR, LTD. and AFFILIATED
                                DEBTORS

                                By_____

                                    Its Chairman

Page 30 of 30

FAX 805-965-0329

EXECUTION COPY

## OPT-OUT INDIVIDUAL PLAINTIFFS

*Additional Plaintiffs Who Have Elected To Execute This Agreement In Order To Opt Out of
the Settlement Class and Remain Bound by this Agreement*
(Use additional counterpart pages as necessary)

DATED: 8/21/2009 _____    _____, Member
                              NAPA VALLEY II, LLC

DATED: _____

DATED: 8/24/2009 _____    Judith K. Basham  Member
                              NAPA VALLEY I, LLC

DATED: _____      _____

DATED: _____      _____

DATED: _____      _____

DATED: _____      _____

DATED: _____      _____

DATED: _____      _____

DATED: _____      _____

EXECUTION COPY

## OPT-OUT INDIVIDUAL PLAINTIFFS

*Additional Plaintiffs Who Have Elected To Execute This Agreement In Order To Opt Out of the Settlement Class and Remain Bound by this Agreement*
(Use additional counterpart pages as necessary)

DATED: __8/21/2009__      _____, Member

                                      NAPA VALLEY II, LLC

DATED: _____      _____

DATED: _____      _____

DATED: _____      _____

DATED: _____      _____

DATED: _____      _____

DATED: _____      _____

DATED: _____      _____

DATED: _____      _____

DATED: _____      _____

Microsoft Word - Ready For Printed Fax - Power CRM Google Docs
Case 2:07-cv-01394-RCJ-GWF   Document 268   Filed 08/03/10   Page 75 of 120
Case 2:07-cv-01394-RCJ-LRL   Document 258-1   Filed 06/23/10   Page 75 of 120

EXECUTION COPY

## OPT-OUT INDIVIDUAL PLAINTIFFS

*Additional Plaintiffs Who Have Elected To Execute This Agreement In Order To Opt Out of the Settlement Class and Remain Bound by this Agreement*
*(Use additional counterpart pages as necessary)*

DATED: _8/18/09_          _Randell_

                          Randy Char

DATED: _____        _____

DATED: _____        _____

DATED: _____        _____

DATED: _____        _____

DATED: _____        _____

DATED: _____        _____

DATED: _____        _____

DATED: _____        _____

DATED: _____        _____

**EXECUTION COPY**

## OPT-OUT INDIVIDUAL PLAINTIFFS

*Additional Plaintiffs Who Have Elected To Execute This Agreement In Order To Opt Out of the Settlement Class and Remain Bound by this Agreement*
(Use additional counterpart pages as necessary)

DATED: _____

DATED: __1/21/09_____

George Kelesis, for P&D Kelesis

DATED: _____

DATED: _____

DATED: _____

DATED: _____

DATED: _____

DATED: _____

DATED: _____

DATED: _____

05/25/2010 16:08 FAX 7028379821 CAMPBELL-BROOKS 001/001
Case 2:07-cv-01394-RCJ-GWF  Document 268  Filed 08/03/10  Page 77 of 120
Case 2:07-cv-01394-RCJ-LRL  Document 258-1  Filed 06/23/10  Page 77 of 120

*FAT TO: 702 - 669 - 9650*
*ATTN: DAVID FREEMAN*
*V sent 5/25/10 2pm*

EXECUTION COPY

## OPT-OUT INDIVIDUAL PLAINTIFFS

*Additional Plaintiffs Who Have Elected To Execute This Agreement In Order To Opt Out of*
*the Settlement Class and Remain Bound by this Agreement*
(Use additional counterpart pages as necessary)

DATED: _____    _____

DATED: __1/21/09__    _____
                                        George Kelesis, for P&D Kelesis

DATED: _____

DATED: __5/25/10__    *Carole Campbell, trustee of the Gerald B. Campbell Trust*
                                        *U/A/D and personal representative of*
DATED: _____    *Gerald B. Campbell*

DATED: _____    _____

DATED: _____    _____

DATED: _____    _____

DATED: _____    _____

DATED: _____    _____

# Schedule A

## SCHEDULE A
### Other Receivership Entities

Nevada Safe Harbor, Inc.

NexGen Management, LLC

International Integrated Industries, LLC

Blackstone Limited, LLC

Sirius Capital, LLC

Americade, LLC

Global Aviation Delaware, LLC

McGhan Management Corp.

Global Asset Management, LP

West Vegas, LP

Bianathar, LLC

Trinity Star Ventures, LLC

Ventana Coast, LLC

# Schedule B

## SCHEDULE B
### Individual Plaintiffs

Napa Valley I, LLC

Napa Valley II, LLC

The Campbell Living Trust, dtd 2/10/03

Gerald B. Campbell declaration of Trust dated August 5, 1999

P&D Kelesis, LLC

Randy Char

Wayne C. Albritton

Greta Albritton

William K. Reeser

Leonard B. Shapiro

Michael Micone

Kerstan Micone

Michael McCormick

Deborah McCormick

Larry G. Wallace, Jr.

4 Ever Aces, Inc.

TIC-Pratt 17, LLC

Brigite Land Management, LLC

Eric G. Tarr I Trust Dated May 4, 1990

D&D Investment Co.

Harbor Investment Group, LLC

Meldrum Family Trust dtd July 21, 1988

# Schedule C

# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000
FACSIMILE (212) 757-3990

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

1615 L STREET, NW
WASHINGTON, DC 20036-5694
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101
FACSIMILE (81-3) 3597-8120

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO. 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300
FACSIMILE (86-10) 6530-9070/9080

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2536-9622

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650



WRITER'S DIRECT DIAL NUMBER

(212) 373-3493

WRITER'S DIRECT FACSIMILE

(212) 492-0493

WRITER'S DIRECT E-MAIL ADDRESS

kcornish@paulweiss.com

November 7, 2007

## VIA FIRST CLASS MAIL

Mark S. Dzarnoski, Esq.
GENTILE DEPALMA LTD.
3960 Howard Hughes Parkway, Suite 850
Las Vegas, Nevada 89169

Craig S. Bloomgarden, Esq.
Robert A. Zeavin, Esq.
Alison H. Mijares, Esq.
STEFFEL LEVITT & WEISS
550 South Hope Street, No. 2350
Los Angeles, California 90071

Erik A. Christiansen, Esq.
Rew R. Goodenow, Esq.
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter that is contained in this document.

Doc#: US1:5076160v1

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

GENTILE DEPALMA LTD..
STEFFEL LEVITT & WEISS
PARSONS BEHLE & LATIMER
November 7, 2007

2

Claim Notice of Silver Oak Capital L.L.C., as Agent, and the
Purchasers (as defined below) in respect of the Directors' and Officers'
Corporate Liability Insurance Policy No. 1706787/1 issued by Carolina
Casualty Company, Inc. (the "Primary Policy") and the Excess Directors and
Officers Liability Insurance Policy No. NHS621925 issued by RSUI Indemnity
Company (the "Excess Policy;" together with the Primary Policy, the "Policies"), in each
case, for MediCor Ltd. and its Subsidiaries

Dear Counsel:

　　　　　This letter is being sent to you in your capacity as counsel to one or more
of the current or former directors and/or officers (the "MediCor Officers and Directors")
of MediCor Ltd. ("MediCor"), including, but not limited to, Donald McGhan and James
McGhan, by us as counsel to and on behalf of Silver Oak Capital L.L.C., as agent (the
"Agent"), and the holders (the "Purchasers") of those certain notes (the "MediCor
Notes") issued by MediCor pursuant to that certain Securities Purchase Agreement (the
"Securities Purchase Agreement"), dated as of April 26, 2006, among MediCor, the
Agent and the Purchasers.

　　　　　Reference is hereby made to (i) the letters addressed to you dated July 27,
2007 and August 27, 2007 (the "Committee Notices") from Blank Rome LLP, as counsel
to the Official Committee of Unsecured Creditors (the "Official Committee") in the
chapter 11 bankruptcy cases (the "Bankruptcy Cases")[1] of MediCor and certain of its
domestic subsidiaries (the "Debtors")[2] and (ii) the various lawsuits filed against one or
more of the MediCor Officers and Directors in the courts of California and Nevada (the
"Litigations"). This Claims Notice supplements the notices and claims as set forth in the
Committee Notices, the Litigations and any other relevant notices previously provided in
connection with the Policies (the "Notices").

　　　　　Pursuant to the Securities Purchase Agreement and certain related
transaction documents, the Purchasers made loans and other extensions of credit to
MediCor and certain of its subsidiaries (collectively, the "Company"") prior to the
commencement of the Bankruptcy Cases in an aggregate principal amount in excess of
$55 million, plus interest, fees and other amounts due and owing with respect thereto
(collectively, the "Prepetition Loans"). As of the filing of the Bankruptcy Cases and as

---

[1]　The Bankruptcy Cases were commenced on June 29, 2007.

[2]　Although the MediCor Notes are secured, the Purchasers are unsecured creditors of the Debtors to the
　　extent of any unsecured deficiency claims, among other claims.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
GENTILE DEPALMA LTD..
STEFFEL LEVITT & WEISS
PARSONS BEHLE & LATIMER
November 7, 2007

3

of the date hereof, none of the Prepetition Loans have been repaid. Moreover, the Purchasers have had to continue funding the Debtors during the Bankruptcy Cases.

As set forth in the Notices, certain MediCor Officers and Directors engaged in Wrongful Acts (as defined in the Primary Policy) and other wrongful conduct for which claims have and may be asserted against them, including by reason of damages suffered by the Agent and the Purchasers as a result of thereof. In fact, the damages suffered by the Agent and the Purchasers in connection with the making of the Prepetition Loans and the failure of such Prepetition Loans to be repaid are the direct result of the wrongful actions, neglect, errors, omissions, misstatements, misleading statements, breaches of fiduciary and other duties of the MediCor Officers and Directors as described in the Notices and for which certain of the MediCor Officers and Directors are liable. Moreover, as noted in the Committee's Claim Notice dated July 27, 2007, this wrongful conduct of the MediCor Officers and Directors "contributed to and caused the insolvency of ... MediCor and its estates" resulting in damage to, among others, the Purchasers. The Agent and the Purchasers may also have Securities Claims (as defined in the Policies) arising from the purchase and sale of the MediCor Notes as a result of such breaches of duty, neglect, error, misstatements, misleading statements, omissions or actions by, among others, the Company and/or the MediCor Officers and Directors, including the *negligent, reckless and/or deliberate exchange of inaccurate information about the nature and extent of the assets of the Company*. (*See* Committee's Claim Notice dated July 27, 2007).

As with the Official Committee, we are continuing to investigate the events and circumstances described above, and we reserve the right to supplement this notice. Nothing in this notice is with prejudice to or waives or impairs any rights or claims that the Agent or the Purchasers may have under the Policies or as against the Company, the MediCor Officers and Directors or any third parties.

Kindly furnish a copy of this letter to MediCor's insurers at the following addresses:

newclaim@monitorliability.com
Christopher J. Ziemba, Esq.
Senior Claims Attorney Monitor Liability
Managers, Inc.
2850 West Golf Road, Suite 800
Rolling Meadows, Illinois  60008-4039
Fax No. (847) 806-4017 / (847) 806-6262

Doc#: US1:5070160v1

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

GENTILE DEPALMA LTD.,
STEFFEL LEVITT & WEISS
PARSONS BEHLE & LATIMER
November 7, 2007

4

info@rsui.com
Peter M. Christel
Assistant Vice President D&O
Claims RSUI Group Inc.
Resurgens Plaza, Suite 1800 945
East Paces Ferry Road
Atlanta, Georgia 30326
Fax No. (404) 264-7239 / (404) 260-3997

Please be advised that we are sending a copy of this letter to Dennis E. Stogsdill, Chief Restructuring Officer of the Debtors, as well as to the Debtors' counsel and counsel to the Official Committee. Please do not hesitate to call if you have any questions.

Very truly yours,

Kelley A. Cornish

cc:   VIA E-MAIL
Robert Chesler (rchesler@lowenstein.com)
Jeffrey Prol (jprol@lowenstein)
Robert L. Brace (rlbrace@hbsb.com)
Joanne J. Matousek (jjmatousek @duanemorris.com
Dennis E. Stogsdill (dstogsdill@alvarezandmarsal.com)
Michael B. Schaedle, Esq. (Schaedle@blankrome.com)
Michael Z. Brownstein, Esq. (Brownstein@blankrome.com)
Gary Wolf (gwolf@angelogordon.com)

# Schedule D



BLANK ROME LLP
COUNSELORS AT LAW

Phone:   (215) 569-5762
Fax:     (215) 832-5762
Email:   Schaedle@BlankRome.com

July 27, 2007

Mark S. Dzarnoski, Esquire
**GENTILE DEPALMA LTD.**
3960 Howard Hughes Parkway, Suite 850
Las Vegas, NV  89169

Craig S. Bloomgarden
Robert A. Zeavin
Alison H. Mijares
**STEEFEL LEVITT & WEISS**
550 S. Hope St #2350
Los Angeles, CA 90071

Erik A. Christiansen
Rew R. Goodenow
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, UT 84111

Re:   **First Supplement to Claim Notice of Official Committee of Unsecured Creditors for MediCor Ltd., International Integrated Incorporated, International Integrated USA Incorporated, MediCor Management, Inc., MediCor Development Company, MediCor Aesthetics, III Acquisition Corporation, d/b/a PIP. America, and Intellectual Property International, Inc. in respect of Directors' and Officers' and Corporate Liability Insurance Policy No. 1706787/1 issued by Carolina Casualty Company, Inc.**

Dear Counsel:

This letter is sent on behalf of the Official Committee of Unsecured Creditors ("the Committee") for MediCor Ltd., International Integrated Incorporated, International Integrated USA Incorporated, MediCor Management, Inc., MediCor Development Company, MediCor Aesthetics, III Acquisition Corporation, d/b/a PIP. America, and Intellectual Property International, Inc. et al. (as debtors in possession, "the Debtors" or "MediCor"). The Committee



**BLANK ROME** LLP
COUNSELORS AT LAW

*July 27, 2007*
*Page 2*

asserts claims on behalf of the Debtors as debtors in possession, their estates, and their unsecured creditors. This letter is sent to you in your capacity as counsel to one or more of the following current or former directors and/or officers of the Debtors: Donald McGhan, James McGhan, Marc Sperberg, Theodore Maloney, Thomas Moyes, Samuel Clay Rogers, Paul Kimmell, Eugene Davis, Mark Brown, Thomas Hartley, Robert Forbuss, Bradley Scher and Ikram Khan ("MediCor Directors"). The matters set forth in this letter are matters of which the Committee is presently aware; however, the Committee's investigation of the Debtors, their estates, the MediCor Directors, the MediCor Officers (as that term is defined hereafter), and their affairs is continuing.

The Committee has become aware of certain facts, circumstances and situations involving the MediCor Directors and MediCor Officers that contributed to and caused the insolvency of and caused MediCor and its estates and unsecured creditors to suffer damages for which the Committee intends to seek money damages and in which related claims the Committee, the Debtors, the Debtors' estates have or may have an interest. These events involved wrongful acts, errors, omissions, misstatements and misleading statements, as well as breaches of fiduciary and other duties owed to the Debtors by the MediCor Directors, and other executive officers of MediCor (the "MediCor Officers"). These events include, but are not limited to, the following:

1. Beginning some time in or around April 2006, the MediCor Directors and the MediCor Officers breached their fiduciary duties to the Debtors by causing the Debtors to enter into a series of lending transactions with Silver Oak Capital, L.L.C., HFTP Investment L.L.C., GAIA Offshore Master Fund, Ltd. and Portside Growth and Opportunity Fund whereby MediCor borrowed an original aggregate principal amount of $50 million (later purportedly increased to more than $60 million for apparently inadequate consideration) (the "Secured Debt"). On information and belief, these lending transaction and certain related acquisitions of the equity in Biosil, Ltd. and Nagor, Ltd. were accomplished in part through the negligent, reckless and/or deliberate exchange of inaccurate information about the nature and extent of the assets of the company. On information and belief, the Secured Debt and related transactions were also the result of negligent and/or reckless misrepresentations as to the future business prospects of the Debtors. The Debtors suffered damages by borrowing more than they were equipped to repay, and their estates and unsecured creditors were damaged both by the diminution of assets available to repay debts and creditors and to otherwise meet MediCor obligations, and the encumbrance of assets otherwise available to repay debts and creditors and to otherwise meet MediCor obligations.



**July 27, 2007**
**Page 3**

2.  In addition, in or around January 2007, the MediCor Directors and MediCor
Officers breached their fiduciary duties to the Debtors by recklessly saddling the
Debtor with additional Secured Debt and other obligations with no reasonable
prospect of repayment, recklessly and/or deliberately causing the Debtors and
their unsecured creditors to have little if any assets to look to for repayment of
ongoing, future and pre-existing unsecured debts. The Debtors suffered damages
by borrowing more than they were equipped to repay, and their estates and
unsecured creditors were damaged both by the diminution of assets available to
repay debts and creditors and to otherwise meet MediCor obligations, and the
encumbrance of assets otherwise available to repay debts and creditors and to
otherwise meet MediCor obligations.

3.  In the period from April 2006 through March 2007, the MediCor Directors and
MediCor officers breached their fiduciary duties to the Debtors by negligently,
recklessly and/or deliberately conspiring with non Debtor entities also controlled
by Donald McGhan, including but not limited to Sirius Capital LLC and
International Integrated Industries, LLC ("International Integrated"), to the
detriment of Debtors and Debtors' unsecured creditors, to replace unsecured debt
owed by MediCor to International Integrated with two notes, one to Sirius Capital
LLC and one to International Integrated, which action, without limitation,
facilitated the placement of the Secured Debt and deepened MediCor obligations
to McGahn and certain other insiders. The Debtors suffered damages by
borrowing more than they were equipped to repay, and their estates and unsecured
creditors were damaged both by the diminution of assets available to repay debts
and creditors and to otherwise meet MediCor obligations, and the encumbrance of
assets otherwise available to repay debts and creditors and to otherwise meet
MediCor obligations.

4.  In the period from April 2006, through June 2007, the MediCor Directors and
MediCor Officers breached their fiduciary duties to the Debtors by negligently,
recklessly and/or deliberately permitting the dissipation of funds provided from
the various MediCor funding sources and for failing to carry out their duty of care
reasonably to supervise, monitor and oversee management and the financial
affairs of the Debtors' business, and recklessly and negligently and/or deliberately
permitting the assets of the Debtors to be used for ultra vires purposes or for the
personal benefit of one or more MediCor Directors. The Debtors and their estates
were damaged by the diminution of value of the business and the Debtors'
unsecured creditors were damaged by an inappropriate increase in liabilities



*July 27, 2007*
*Page 4*

and/or the dissipation of assets that might otherwise have been available for payments of the debts owed to them.

5.  Beginning in or about July 2004, to the extent that the MediCor Directors and MediCor officers participated in a racketeering enterprise and breached their fiduciary duties to the Debtors by negligently, recklessly and/or deliberately permitting the Debtors to use improper funding sources to purchase Eurosilicone SAS, the MediCor Directors and MediCor Officers then caused the equity of Eurosilicone SAS to be included in MediCor/MediCor affiliate financial statements, wrongfully inflating the value of the MediCor business and assisting in causing the Debtors to incur the Secured Debt and engage in related transactions. The Debtors suffered damages by borrowing more than they were equipped to repay, and their estates and unsecured creditors were damaged both by the diminution of assets available to repay debts and creditors and to otherwise meet MediCor obligations, and the encumbrance of assets otherwise available to repay debts and creditors and to otherwise meet MediCor obligations.

6.  Upon information and belief, at times otherwise relevant to this claim notice, MediCor Directors and MediCor Officers may have negligently and recklessly transferred MediCor or MediCor affiliate property to MediCor affiliates overseas, including, without limitation, in South America, which property was dissipated for no corresponding value to the Debtors; thereby, damaging the Debtors in an amount related to the value of the property so dissipated.

The Committee is continuing to investigate the above transactions and events, and others, to determine the extent of the monetary and non-monetary losses suffered by the Debtors and their unsecured creditors as a result of the wrongful acts and breaches of fiduciary duty committed by the MediCor Directors and MediCor Officers. It may supplement this notice under applicable law, including, without limitation, applicable bankruptcy law hereafter. Nothing in this notice claim is with prejudice to or waives or impairs any rights or claims of the Committee, the Debtors' estates or unsecured creditors in connection with any third parties or otherwise.

Kindly immediately furnish a copy of this letter to MediCor's insurers at the following addresses:

newclaim@monitorliability.com
Christopher J. Ziemba, Esq.
Senior Claims Attorney
Monitor Liability Managers, Inc.



BLANK ROME LLP
COUNSELORS AT LAW

*July 27, 2007*
*Page 5*

2850 West Golf Road, Suite 800
Rolling Meadows, IL 60008-4039

Fax 404-264-7239
info@rsui.com
Peter M. Christel
Assistant Vice President
D&O Claims
RSUI Group Inc.
Resurgens Plaza, Suite 1800
945 East Paces Ferry Road
Atlanta, GA 30326

We are sending a copy of this letter to Dennis E. Stogsdill, Chief Restructuring Officer of the Debtors, as well as to Debtors' counsel.  Please do not hesitate to call if you have any questions.

Very truly yours,

MICHAEL B. SCHAEDLE

cc:     Robert Chesler (by email rchesler@lowenstein.com)
        Robert L. Brace (by email rlbrace@hbsb.com)
        Joanne J. Matousek (by email jjmatousek@duanemorris.com)

        Dennis E. Stogsdill (by email dstogsdill@alvarezandmarsal.com)
        Ann Blair Laupheimer, Esquire
        Michael Z. Brownstein, Esquire

127951.01600/21612953v.1



**BLANK** **ROME** LLP
COUNSELORS AT LAW

Phone: (215) 569-5758
Fax: (215) 832-5758
Email: Lauphelmer@BlankRome.com

August 27, 2007

Mark S. Dzarnoski, Esquire
**GENTILE DEPALMA LTD.**
3960 Howard Hughes Parkway, Suite 850
Las Vegas, NV 89169

Craig S. Bloomgarden
Robert A. Zeavin
Alison H. Mijares
**STEEFEL LEVITT & WEISS**
550 S. Hope St #2350
Los Angeles, CA 90071

Erik A. Christiansen
Rew R. Goodenow
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, UT 84111

Re:    Second Supplement To Claim Notice of Official Committee of Unsecured
       Creditors  for MediCor Ltd., International Integrated Incorporated,
       International Integrated USA Incorporated, MediCor Management, Inc.,
       MediCor Development Company, MediCor Aesthetics, III Acquisition
       Corporation, d/b/a PIP. America, and Intellectual Property International,
       Inc. in respect of Directors' and Officers' and Corporate Liability Insurance
       Policy No. 1706787/1 issued by Carolina Casualty Company, Inc.

Dear Counsel:

This letter is sent on behalf of the Official Committee of Unsecured Creditors ("the
Committee") for MediCor Ltd., International Integrated Incorporated, International Integrated
USA Incorporated, MediCor Management, Inc., MediCor Development Company, MediCor
Aesthetics, III Acquisition Corporation, d/b/a PIP. America, and Intellectual Property
International, Inc. et al. (as debtors in possession, "the Debtors" or "MediCor"). The Committee



asserts claims on behalf of the Debtors as debtors in possession, their estates, and their unsecured creditors. This letter is sent to you in your capacity as counsel to one or more of the following current or former directors and/or officers of the Debtors: Donald McGhan, James McGhan, Marc Sperberg, Theodore Maloney, Thomas Moyes, Samuel Clay Rogers, Paul Kimmell, Eugene Davis, Mark Brown, Thomas Hartley, Robert Forbuss, Bradley Scher and Ikram Khan ("MediCor Directors").

On July 27, 2007, the Committee sent its original claim notice letter, setting forth those matters of which it was presently aware; however, the Committee's investigation of the Debtors, their estates, the MediCor Directors, the MediCor Officers (as that term is defined hereafter), and their affairs is continuing, and this supplemental letter provides notice of additional matters, as follows, of which the Committee has become aware involving the MediCor Directors and MediCor Officers that contributed to and caused the insolvency of and caused MediCor and its estates and unsecured creditors to suffer damages for which the Committee intends to seek money damages and in which related claims the Committee, the Debtors, the Debtors' estates have or may have an interest. These events involved wrongful acts, errors, omissions, misstatements and misleading statements, as well as breaches of fiduciary and other duties owed to the Debtors by the MediCor Directors, and other executive officers of MediCor (the "MediCor Officers"):

By means of a Sale and Purchase Agreement dated September 13, 2005, as amended by subsequent amendment deeds on January 16, 2006 and April 14, 2006, the Medicor Officers and Medicor Directors breached their fiduciary duties by acting negligently, recklessly and/or intentionally to cause Medicor to acquire the shares of Nagor and Biosil for a cash consideration far in excess of their fair market value. In addition to the unfair and inflated purchase price, the Medicor Officers and Medicor Directors caused Medicor to agree to onerous terms and conditions for the sale, including conferring onerous ongoing obligations upon Medicor, and rights upon the Sellers, John Gordon Evans, Jessie Anne Evans, John Alsop and Joseph Gallagher, all to the financial detriment of Medicor.

The Committee is continuing to investigate the above transactions and events, and others, to determine the extent of the monetary and non-monetary losses suffered by the Debtors and their unsecured creditors as a result of the wrongful acts and breaches of fiduciary duty committed by the MediCor Directors and MediCor Officers. It may supplement this notice under applicable law, including, without limitation, applicable bankruptcy law hereafter. Nothing in this notice claim is with prejudice to or waives or impairs any rights or claims of the Committee, the Debtors' estates or unsecured creditors in connection with any third parties or otherwise.



**BLANK** ▪ **ROME** LLP
COUNSELORS AT LAW

*August 27, 2007*
*Page 3*

Kindly immediately furnish a copy of this letter to MediCor's insurers at the following addresses:

> newclaim@monitorliability.com
> Christopher J. Ziemba, Esq.
> Senior Claims Attorney
> Monitor Liability Managers, Inc.
> 2850 West Golf Road, Suite 800
> Rolling Meadows, IL 60008-4039

> Fax 404-264-7239
> info@rsui.com
> Peter M. Christel
> Assistant Vice President
> D&O Claims
> RSUI Group Inc.
> Resurgens Plaza, Suite 1800
> 945 East Paces Ferry Road
> Atlanta, GA 30326

We are sending a copy of this letter to Dennis E. Stogsdill, Chief Restructuring Officer of the Debtors, as well as to Debtors' counsel. Please do not hesitate to call if you have any questions.

Very truly yours,

ANN BLAIR LAUPHEIMER

cc:    Robert Chesler (by email rchesler@lowenstein.com)
       Robert L. Brace (by email rlbrace@hbsb.com)
       Joanne J. Matousek (by email jjmatousek@duanemorris.com)

       Dennis E. Stogsdill
       Michael B. Schaedle, Esquire
       Michael Z. Brownstein, Esquire

127951.01600/21620813v.1

# Schedule E

1   GORDON SILVER
    MARK S. DZARNOSKI
2   Nevada Bar No. 3398
    3960 Howard Hughes Pkwy., 9th Floor
3   Las Vegas, Nevada 89169
    (702) 796-5555
4   Attorneys for Donald K. McGhan, Jim J. McGhan,
    Shirley M. McGhan and Nikki M. Pomeroy

5

6

7                **DISTRICT COURT**

8            **CLARK COUNTY, NEVADA**

9                           CASE NO. 07-A-535439-B
10                          DEPT. XI

11  IN RE: RECEIVERSHIP OF SOUTHWEST
    EXCHANGE, INC. AND CONSOLIDATED
12  LITIGATION,                 **DECLARATION OF JIM J. MCGHAN**
                                  **REGARDING STATEMENT OF**
13                                **FINANCIAL CONDITION**

14

15

16        I, Jim J. McGhan, under penalty of perjury pursuant to the laws of the State of Nevada

17  and of the United States of America, do hereby depose and say:

18        1.     I am a defendant in Action 07-A-535439-B in the Eighth Judicial District Court of

19
    the State of Nevada in and for the County of Clark entitled "*In Re: Receivership of Southwest*
20
    *Exchange, Inc. and Consolidated Litigation* and MDL Docket No. 1878, Case No. 2:07-cv-
21
    01394-RCJ-(LRL), pending in the United States District Court for the District of Nevada entitled
22
    "*In Re: Internal Revenue Service § 1031 Tax Deferred Exchange Litigation (collectively "SWX*
23
    *Customer Litigation.*")
24

25        2.     I am informed and believe that the SWX Customer Litigation as well as other
26
    matters which arise out of or are in some way related to the operation and subsequent failure of
27
    Southwest Exchange or Qualified Exchange Services, including their parents, subsidiaries, or
28

affiliates are being settled by multiple remaining parties. It is my understanding that the formal terms of settlement are being reduced to writing in a document entitled *Wave V Settlement Agreement*.

3.     On information and belief, pursuant to paragraph 5(B) of the current draft of the *Wave V Settlement Agreement*, I am required to provide financial statements disclosing all of my assets and liabilities, which reflect that all non-exempt assets that could be used to satisfy judgments against me have been turned over to the State Court Receiver in compliance with the *Term Sheet I entered into with the Receiver on or about May 31, 2007.*

4.     Attached hereto as Exhibit A is a statement of financial condition as of May 31, 2009 which truthfully and accurately sets forth my financial condition as of that date. Other than as set forth therein, I have no knowledge of any other non-exempt assets nor do I have access to such assets that could be used to satisfy any judgments against me.

5.     I understand and agree that if the representations made herein and in my financial disclosure statement are materially false that the Releases I am obtaining in the *Wave V Settlement Agreement* may be voided and the Settlement Class and Individual Plaintiffs may re-file their claims against me and that any assets not disclosed herein are subject to forfeiture.

DATED this 3RD day of July, 2009.

_____
JIM J. MCGHAN

**A.**   **Assets:**

| | | |
|---|---|---:|
| 1. | Cash | <$500 |
| 2. | Loans or Notes Receivable | 0 |
| 3. | Real Estate: | 0 |
| 4. | Household goods, furnishings, electronics, wearing apparel, other personal effects and yard equipment in excess of $12,000 in value | 0 |
| 5. | Private libraries, works of art, musical instruments and jewelry in excess of $5,000 in value | 0 |
| 6. | Automobiles   2006 Cadillac Escalade | 21,915 |
| 7. | Securities   2,762,427 shares MediCor Ltd. | 0 |
| 8. | Partnership Interests | 0 |
| 10. | Individual Retirement Accounts (IRAs) | 0 |
| 11. | Keogh Accounts or Plans | 0 |
| 12. | 401(k) Accounts or Plans | 0 |
| 13. | Simplified Employee Pension Plans | 0 |
| 14. | Other Pension Assets | 0 |
| 15. | Annuities | 0 |

(NOTE: interest in contingent distribution by Arthrocare believed to be <$20,000 to be delivered to Qualified Settlement Fund)

**B.**    **Liabilities:**

1.    Mortgages

    0

    0

    0

2.    Auto Loans    2006 Cadillac Escalade            25,064

3.    Credit Card Debt                    (approx)    27,000

4.    Other Loans or Notes Payable        (approx)    190,000

5.    Accrued Real Estate Taxes    (in impound account)    0

6.    Judgments/Settlements Owed            0

7.    Other (Itemize):
    Federal Income Tax        (approx)    275,000
    CA State Income Tax        (approx)    15,000

DATED this _3RD_ day of July, 2009.

_____

**Jim J. McGhan**

1 | GORDON SILVER
MARK S. DZARNOSKI
2 | Nevada Bar No. 3398
3960 Howard Hughes Pkwy., 9th Floor
3 | Las Vegas, Nevada 89169
(702) 796-5555
4 | Attorneys for Donald K. McGhan, Jim J. McGhan,
Shirley M. McGhan and Nikki M. Pomeroy

5

6

7

8

9

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

|  |  |
|---|---|
| IN RE: RECEIVERSHIP OF SOUTHWEST EXCHANGE, INC. AND CONSOLIDATED LITIGATION, | CASE NO. 07-A-535439-B DEPT. XI |
|  | **DECLARATION OF SHIRLEY MCGHAN REGARDING STATEMENT OF FINANCIAL CONDITION** |

I, Shirley M. McGhan, under penalty of perjury pursuant to the laws of the State of Nevada and of the United States of America, do hereby depose and say:

1.     I am a defendant in Action 07-A-535439-B in the Eighth Judicial District Court of the State of Nevada in and for the County of Clark entitled *"In Re:  Receivership of Southwest Exchange, Inc. and Consolidated Litigation* and MDL Docket No. 1878, Case No. 2:07-cv-01394-RCJ-(LRL), pending in the United States District Court for the District of Nevada entitled *"In Re: Internal Revenue Service § 1031 Tax Deferred Exchange Litigation (collectively "SWX Customer Litigation.")*

2.     I am informed and believe that the SWX Customer Litigation as well as other matters which arise out of or are in some way related to the operation and subsequent failure of Southwest Exchange or Qualified Exchange Services, including their parents, subsidiaries, or

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy

101339-001/declaration_Shirley_FINANCIAL

1 of 2

1  affiliates are being settled by multiple remaining parties. It is my understanding that the formal

2  terms of settlement are being reduced to writing in a document entitled *Wave V Settlement*

3  *Agreement*.

4      3.      On information and belief, pursuant to paragraph 5(B) of the current draft of the

5  *Wave V Settlement Agreement*, I am required to provide financial statements disclosing all of my

6

7  assets and liabilities, which reflect that all non-exempt assets that could be used to satisfy

8  judgments against me have been turned over to the State Court Receiver in compliance with the

9  Term Sheet I entered into with the Receiver on or about May 31, 2007.

10      4.      Attached hereto as Exhibit A is a statement of financial condition as of May 31,

11  2009 which truthfully and accurately sets forth my financial condition as of that date. Other than

12  as set forth therein, I have no knowledge of any other non-exempt assets nor do I have access to

13  such assets that could be used to satisfy any judgments against me.

14

15      5.      I understand and agree that if the representations made herein and in my financial

16  disclosure statement are materially false that the Releases I am obtaining in the *Wave V*

17  *Settlement Agreement* may be voided and the Settlement Class and Individual Plaintiffs may re-

18  file their claims against me and that any assets not disclosed herein are subject to forfeiture.

19

20      DATED this 3⁄ day of June, 2009.

21

22  SHIRLEY M. MCGHAN

23

24

25

26

27

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy

2 of 2

101339-001/declaration_Shirley_FINANCIAL

STATEMENT OF FINANCIAL CONDITION OF
**Shirley M. McGhan as of May 31, 2009**

A.    **Assets:**

1.    Cash                                                                                          _<$1,000_

2.    Loans or Notes Receivable                                                      __0___

3.    Real Estate: _____      __0_

      _____

      _____

4.    Household goods, furnishings, electronics, wearing apparel,
      other personal effects and yard equipment in excess of
      $12,000 in value                                                                     __0___

5.    Private libraries, works of art, musical instruments and
      jewelry in excess of $5,000 in value                                       __0__

6.    Automobiles _____          __0___

      _____

      _____

7.    Securities       __marital interest in  shares of Medicor Ltd.__     __0__
                        __owned by Donald K. McGhan_____

      _____

      _____

8.    Partnership Interests                                                               __0__

10.   Individual Retirement Accounts (IRAs)                                 __0___

11.   Keogh Accounts or Plans                                                      __0__

12.   401(k) Accounts or Plans                                                     __0__

13.   Simplified Employee Pension Plans                                      __0__

14.   Other Pension Assets                                                            __0__

15.   Annuities                                                                                __0__

16.    Other Items in excess of $10,000 in value

                                                                           0

(NOTE: interest in contingent distribution by Arthrocare believed to be <$30,000 to be delivered to Qualified Settlement Fund)

**B.**    **Liabilities:**

1.    Mortgages                                            0
                                                           0
                                                           0

2.    Auto Loans                                          0

3.    Credit Card Debt                             0

4.    Other Loans or Notes Payable            0

5.    Accrued Real Estate Taxes    (in impound account)     0

6.    Judgments/Settlements Owed          0

7.    Other (Itemize):_____

           _Federal Income Tax_____     undetermined_

DATED this _____ day of June, 2009.

_Shirley M. McGhan_ (signature)

Shirley M. McGhan

1  GORDON SILVER
   MARK S. DZARNOSKI
2  Nevada Bar No. 3398
   3960 Howard Hughes Pkwy., 9th Floor
3  Las Vegas, Nevada 89169
   (702) 796-5555
4  Attorneys for Donald K. McGhan, Jim J. McGhan,
   Shirley M. McGhan and Nikki M. Pomeroy

5

6

7                        DISTRICT COURT

8                   CLARK COUNTY, NEVADA

9

10                                      CASE NO. 07-A-535439-B
                                        DEPT. XI
11 IN RE: RECEIVERSHIP OF SOUTHWEST
   EXCHANGE, INC. AND CONSOLIDATED
12 LITIGATION.                          DECLARATION OF NIKKI POMEROY
                                        REGARDING STATEMENT OF
13                                      FINANCIAL CONDITION

14

15

16        I, Nikki Pomeroy, under penalty of perjury pursuant to the laws of the State of Nevada

17 and of the United States of America, do hereby depose and say:

18        1.       I am a defendant in Action 07-A-535439-B in the Eighth Judicial District Court of

19 the State of Nevada in and for the County of Clark entitled "*In Re:  Receivership of Southwest

20 *Exchange, Inc. and Consolidated Litigation* and MDL Docket No. 1878, Case No. 2:07-cv-

21

22 01394-RCJ-(LRL), pending in the United States District Court for the District of Nevada entitled

23 "*In Re: Internal Revenue Service § 1031 Tax Deferred Exchange Litigation (collectively "SWX

24 *Customer Litigation.")*

25        2.       I am informed and believe that the SWX Customer Litigation as well as other

26 matters which arise out of or are in some way related to the operation and subsequent failure of

27

28 Southwest Exchange or Qualified Exchange Services, including their parents, subsidiaries, or

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101359-001/declaration_NIKKI_FINANCIAL.                    1 of 2

FROM

1  affiliates are being settled by multiple remaining parties.  It is my understanding that the formal

2  terms of settlement are being reduced to writing in a document entitled *Wave V Settlement*

3  *Agreement*.

4      3.      On information and belief, pursuant to paragraph 5(B) of the current draft of the

5  *Wave V Settlement Agreement*, I am required to provide financial statements disclosing all of my

6

7  assets and liabilities, which reflect that all non-exempt assets that could be used to satisfy

8  judgments against me have been turned over to the State Court Receiver in compliance with the

9  Term Sheet I entered into with the Receiver on or about May 31, 2007.

10     4.      Attached hereto as Exhibit A is a statement of financial condition as of May 31,

11  2009 which truthfully and accurately sets forth my financial condition as of that date.  Other than

12  as set forth therein, I have no knowledge of any other non-exempt assets nor do I have access to

13  such assets that could be used to satisfy any judgments against me.

14

15     5.      I understand and agree that if the representations made herein and in my financial

16  disclosure statement are materially false that the Releases I am obtaining in the *Wave V*

17  *Settlement Agreement* may be voided and the Settlement Class and Individual Plaintiffs may re-

18  file their claims against me and that any assets not disclosed herein are subject to forfeiture.

19

20     DATED this 30th day of June, 2009.

21

22  *Nikki Pomeroy*
    NIKKI POMEROY

23

24

25

26

27

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101339-001/declaration_NIKKI_FINANCIAL

2 of 2

FROM
Case 2:07-cv-01394-RCJ-GWF  Document 268  Filed 08/09/10  Page 107 of 120
Case 2:07-cv-01394-RCJ-LRL  Document 258-1  Filed 06/23/10  Page 107 of 120

STATEMENT OF FINANCIAL CONDITION OF
**NIKKI POMEROY as of May 31, 2009**

**A.**   **Assets:**

1.  Cash                                                                   _<$1,000_

2.  Loans or Notes Receivable                                             _0_

3.  Real Estate:   _8625 Titleist Circle, Las Vegas, NV_____    _700,000_
                   _(listed for approx 1 year at $999,999_____

4.  Household goods, furnishings, electronics, wearing apparel,
    other personal effects and yard equipment in excess of
    $12,000 in value                                                      _0_

5.  Private libraries, works of art, musical instruments and
    jewelry in excess of $5,000 in value                                  _0_

6.  Automobiles   _(driving borrowed car)_____           _0_

7.  Securities    _2,093,563 shares Medicor Ltd._____         _0_
                  _167,435 shares Medicor, Ltd in SEPP___     _0_

8.  Partnership Interests                                                  _0_

10. Individual Retirement Accounts (IRAs)                                 _0_

11. Keogh Accounts or Plans                                               _0_

12. 401(k) Accounts or Plans                                             _0_

13. Simplified Employee Pension Plans          (approx value)  _190,000_

14. Other Pension Assets                                                  _0_

15. Annuities                                                            _0_

FROM
Case 2:07-cv-01394-RCJ-GWF   Document 268   Filed 08/03/10   Page 108 of 120
Case 2:07-cv-01394-RCJ-LRL   Document 258-1   Filed 06/23/10   Page 108 of 120

16.  Other Items in excess of $10,000 in value

_____    __0__

(NOTE: interest in contingent distribution by Arthrocare believed to be <$20,000 to be delivered to Qualified Settlement Fund)

_____    _____

_____    _____

**B.  Liabilities:**

1.  Mortgages  _Charles Schwab Bank_(in default)_____    _555,000_
                _ Charles Schwab Impound Account_____    _20,000_
                _2nd Trust Deed Loan_____    _25,000_

2.  Auto Loans  _____    __0___
                _____    _____
                _____    _____

3.  Credit Card Debt                                _35,000_

4.  Other Loans or Notes Payable                    __0__

5.  Accrued Real Estate Taxes   (in impound account)    __15,000_

6.  Judgments/Settlements Owed                       __0___

7.  Other (Itemize):_____    __0___
              ___Federal Income Tax_____    undetermined_
              _____    _____
              _____    _____
              _____    _____

DATED  this 30th day of June, 2009.

_Nikki Pomeroy_
Nikki Pomeroy

# Schedule F

1 | Robert L. Brace, Ca. Bar No. 122240
Michael P. Denver, Ca. Bar No. 199279      **EXEMPLAR**
**FOR THE CLASS**

2 | **HOLLISTER & BRACE**
P.O Box 630

3 | Santa Barbara, Ca. 93102
Telephone: (805) 963-6711

4 | *Attorneys for Plaintiffs*
*And all others similarly situated*

5

6

7 | **UNITED STATES DISTRICT COURT**

8 | **FOR THE DISTRICT OF NEVADA**

9

10 | IN RE: INTERNAL REVENUE ) MDL Docket No. 1878
SERVICE § 1031 TAX DEFERRED ) Case No. 07-cv-01394-RCJ-LRL
EXCHANGE LITIGATION )

11 | )

12 | Sorrell, et al. v. Southwest Exchange, ) **CONFESSION OF JUDGMENT BY**
Inc., et al. ) **DEFENDANT DONALD K. MCGHAN**
)

13 | _____ )

14 |      The Sorrell Plaintiffs, on behalf of themselves and the Settlement Class (defined

15 | below), on the one hand, and Defendant Donald K. McGhan ("McGhan"), on the other, through

16 | their respective counsel of record, having negotiated in good faith and in order to avoid the

17 | expense of further litigation and to resolve the claims in the above-captioned matter, state as

18 | follows:

19 |      McGhan hereby confesses to a Judgment in the amount of $41,341,028 (the

20 | "Judgment") and authorizes the Judgment to be entered against McGhan in favor of the

21 | Settlement Class, defined as follows:[1]

22 |      All persons who were customers of SWX or QES, including any subsidiaries or

23 | affiliates of SWX or QES engaged in business as Qualified Intermediaries

24

25 | [1] Excluded from the Settlement Class are the "Individual Plaintiffs" in the related State Court Action pending
before Judge Gonzalez, Lead Case No. 07-A-535439-B, each of whom have opted-out of the Settlement Class and

26 | are receiving individual Judgments against McGhan pursuant to separate Confessions of Judgment. The Individual
Plaintiffs are: 4 Ever Acres, Inc.; Wayne and Greta Albritton; Brigite Land Management, LLC; D&D Investment

27 | Co; Eric G. Tarr Trust; Harbor Investment Group, LLC; Michael and Kersten Micone; Leonard Shapiro; TIC Pratt
17, LLC; Larry C. Wallace, Jr.; Michael and Deborah McCormick; William K. Reeser; Napa Valley I, LLC; Napa

28 | Valley II, LLC; Gerald B. Campbell Trust; Meldrum Family Trust; P&D Kelesis, LLC; and Randy Char.

1

CONFESSION OF JUDGMENT DONALD MCGHAN

pursuant to 26 U.S.C. § 1031, and who suffered loss or damages or allegedly suffered loss or damages in any way, directly or indirectly, related to or arising out of: (a) the failure of SWX or QES, including their subsidiaries and affiliates; or (b) any of the events, acts or conduct alleged in the Master Complaint and Fourth Amended Complaint in the action entitled *In re: Receivership of Southwest Exchange, Inc. and Consolidated Litigation*, Case No.: 07-A-535439-B, pending in the Eighth Judicial District Court, Clark County, Nevada, or in the class action litigation pending in the action entitled *In Re: Southwest Exchange, Inc. Internal Revenue Service Section 1031 Tax Deferred Exchange Litigation*, U.S. District Court for the Dist. of Nevada Case No. 2:07-CV-01394-RCJ-LRL, pending in the United States District Court for the District of Nevada.

The amount of the Judgment ($41,341,028) is the combined total of the Settlement Class Members' lost exchange funds.[2]

In exchange for McGhan's agreement that the Settlement Class is entitled to the entry of the $41,341,028 Judgment, the Settlement Class Members agree to forego claims against McGhan for additional damages, including consequential, punitive and exemplary damages;

The Judgment shall accrue interest at the legal rate from the day of entry until all amounts owed under the Judgment have been paid in full. As part of the Judgment, the Settlement Class shall also be entitled to recover pre-judgment interest from the date of filing their Complaint at the statutory rate and reasonable attorneys' fees and costs incurred in satisfying the Judgment;

McGhan expressly agrees that this Confession of Judgment is for a debt justly due and owing to the Settlement Class and this Confession of Judgment shall constitute and be accepted as the written statement authorizing confession of judgment as provided in 28 USC § 1874, Nevada Revised Statute 17.090 et. seq., and similar statutes;

The circumstances giving rise to this Confession of Judgment are as follows:

1.     In order to effectuate Internal Revenue Code Section 1031 exchanges, the Settlement Class Members deposited exchange funds with SWX (Southwest Exchange, Inc.

---

[2] Exchange funds are the funds deposited at SWX and/or its affiliates which have been lost, as determined by the Receiver.

2

1 and its affiliates, including QES, are collectively referred to herein as "SWX"), a Qualified

2 Intermediary owned or controlled by McGhan;

3     2.    From in or about July 2004, until the collapse of SWX in January 2007, McGhan

4 knowingly, intentionally, and fraudulently withheld from SWX clients and potential clients

5 information regarding his lending SWX money to entities to purchase Eurosilocone. McGhan

6 knew that the clients and potential clients would consider such practice too risky and would not

7 use the services of SWX;

8     3.    From, at least, August 30, 2006, until the collapse of SWX in January 2007,

9 McGhan knew that SWX was insolvent and did not have sufficient liquid assets or sources of

10 capital to satisfy its contractual obligations to purchase Replacement Properties for new clients.

11 Yet, at McGhan's direction, SWX continued to aggressively market itself and seek new

12 customers under the false premise that SWX was financially secure and stable;

13     4.    As a result of the above and foregoing, from at least August 30, 2006 to January

14 30, 2007, McGhan falsely and fraudulently deceived clients, including Settlement Class

15 Members, into believing he was operating SWX consistently with the terms of the SWX

16 contracts with its customers, had invested the trust funds in such a manner so as to meet the

17 customer's needs, and that SWX would be able to fund its clients' purchases of Replacement

18 Properties to complete their 1031 exchanges. Between on or about August 30, 2006, and

19 January 30, 2007, McGhan falsely and fraudulently caused customers, including Settlement

20 Class Members, to deposit approximately $95 million dollars with SWX;

21     5.    The representative Plaintiffs, on behalf of the Class, sued McGhan for, among

22 other things, RICO violations based upon the above and foregoing;

23     6.    For his actions at SWX, McGhan was indicted by the Federal Government and

24 has entered a plea of guilty to wire fraud in the criminal proceeding styled *USA v. McGhan*,

25 USDC NV Case No. 2:09-CR-00199-PMP-PAL. The plea agreement executed in that action

26 (Docket No. 8) is incorporated herein by reference thereto. Pursuant to his plea, McGhan has

27 admitted that he devised and intended to devise a scheme and artifice to defraud and obtain

28 money and property by means of false and fraudulent pretenses, representations and promises;

CONFESSION OF JUDGMENT DONALD MCGHAN

7.      In order to avoid the cost of continued litigation, McGhan has entered into a "Wave V Settlement Agreement" with the Class, pursuant to which: (i) McGhan has agreed to the entry of the Judgment against him in the amount of the Settlement Class Members' lost exchange funds; and (ii) the Class has agreed to forego all other claims against McGhan.

In lieu of immediately paying the Settlement Class the amount McGhan admits he owes, McGhan has agreed to confess judgment as set forth herein thereby granting to the Settlement Class rights as judgment creditors;

McGhan expressly agrees that the confessed Judgment is for money obtained by means of false and fraudulent pretenses, representations and promises.  As such, McGhan expressly agrees that the Judgment is non-dischargeable pursuant to 11 USC § 523(a)(2)(A), 11 USC § 523(a)(4) and 11 USC § 523 (a)(6);

McGhan expressly agrees that, there is no just reason for the delay in entering the Judgment and the Judgment, in the form attached hereto as Exhibit 1, shall be entered forthwith pursuant to Federal Rule of Civil Procedure 54(b);

4

CONFESSION OF JUDGMENT DONALD MCGHAN

**VERIFICATION**

STATE OF NEVADA          )
                                          )ss.
COUNTY OF CLARK      )

Donald K. ,McGhan,  being  sworn, deposes and says:

That he is the Defendant in the above matter; he has read the foregoing Confession of

Judgment, knows the contents herein, and the same is true of his own knowledge, except as to

those matters therein stated on information and belief, as to those matters, he believes them to

be true.

      Dated this _____ day of _____, 2009.


_____

Donald K. McGhan


SUBSCRIBED and SWORN to before me
this _____ day of _____, 2009.


_____

NOTARY PUBLIC

CONFESSION OF JUDGMENT DONALD MCGHAN

# EXHIBIT 1

# EXHIBIT 1

1 | Robert L. Brace, Ca. Bar No. 122240
Michael P. Denver, Ca. Bar No.199279
2 | **HOLLISTER & BRACE**
P.O Box 630
3 | Santa Barbara, CA  93102
Telephone: (805) 963-6711
4 | Facsimile:  (805) 965-0329
*Attorneys for Plaintiffs and the Class*

5

6

7 | **UNITED STATES DISTRICT COURT**

8 | **FOR THE DISTRICT OF NEVADA**

9 | IN RE:   SOUTHWEST EXCHANGE          MDL Docket No. 1878
10 | INC. INTERNAL REVENUE               Case No. 07-cv-01394-RCJ-LRL
SERVICE  § 1031 TAX DEFERRED
11 | EXCHANGE LITIGATION

12 | Sorrell, et al. v. Southwest Exchange,     **JUDGMENT AGINST DEFENDANT**
Inc., et al.                                **DONALD K. MCGHAN FOR**
13 |                                         **$41,341,028**

14

15

16 |         Pursuant to the Confession of Judgment executed by Defendant Donald K. McGhan
17 | ("McGhan") dated June ___, 2009, which is incorporated herein by reference, a Judgment in the
18 | amount of $41,341,028 is hereby entered against McGhan, in favor of the Plaintiffs.  Interest
19 | on the Judgment shall accrue at the statutory rate from the date of entry. THIS COURT FINDS
20 | and expressly determines that there is no just reason for delay and pursuant to F.R.C.P. 54(b)
21 | hereby directs entry of the Judgment.  THIS COURT ORDERS that entry of this Judgment
22 | disposes of the entire above-captioned matter as to McGhan.  Without affecting the finality of
23 | this Judgment, this Court shall retain exclusive and continuing jurisdiction over the above-
24 | referenced action and McGhan, for purposes of implementing, enforcing, and interpreting the
25 | Judgment.

26 |         IT IS SO ORDERED.

27 | Dated: June____, 2009              By: _____
28 |                                          The Hon. Robert C. Jones
                                           United States District Court Judge

1    GORDON SILVER                                    **EXEMPLAR FOR**
     MARK S. DZARNOSKI                                **INDIVIDUAL PLAINTIFFS**
2    Nevada Bar No. 3398
     3960 Howard Hughes Pkwy., 9th Floor
3    Las Vegas, Nevada 89169
     (702) 796-5555
4    Attorneys for Donald K. McGhan,

5

6

7                           **DISTRICT COURT**

8                      **CLARK COUNTY, NEVADA**

9                                            CASE NO. 07-A-535439-B
                                             DEPT. XI
10   IN RE: RECEIVERSHIP OF SOUTHWEST
     EXCHANGE, INC. AND CONSOLIDATED
11   LITIGATION,                             **CONFESSION OF JUDGMENT**

12

13

14

15

16   Defendant Donald McGhan, by and through his counsel of record, Mark S. Dzarnoski of the law

17   firm of Gordon Silver, Ltd., and Plaintiff _____ ("Plaintiff"), by and through

18   his/her/its counsel of record, J. Steven Peek, Esq. and Brad M. Johnston, Esq. of Holland & Hart

19   having negotiated in good faith and in order to avoid the expense of further litigation and to

20   resolve the claims in the above-captioned matter, state as follows:

21          McGhan hereby confesses to a Judgment in the amount of Twenty One Million One

22   Hundred Eighty One Thousand Six Hundred Ninety and 38/100 Dollars ($21,181,690.38) (the

23   "Judgment") and authorizes the Judgment to be entered against McGhan in favor of the Plaintiff.

24          In exchange for McGhan's agreement that Plaintiff is entitled to the entry of the

25   Judgment, Plaintiff has agreed to forego claims against McGhan for additional damages,

26   including consequential, punitive and exemplary damages all as set forth in a definitive

27   Settlement Agreement commonly known as Wave V Settlement Agreement;

28          The Judgment shall accrue interest at the legal rate from the day of entry until all

Gordon Silver
Attorneys At Law
Ninth Floor
Howard Hughes Pkwy
Vegas, Nevada 89169
(702) 796-5555

101339-001/Exemplar.doc                        1 of 4

1 amounts owed under the Judgment have been paid in full. As part of the Judgment, the Plaintiff

2 shall also be entitled to recover pre-judgment interest from the date of filing their Complaint at

3 the statutory rate and reasonable attorneys' fees and costs incurred in satisfying the Judgment;

4 McGhan expressly agrees that this Confession of Judgment is for a debt justly due and

5 owing to Plaintiff and this Confession of Judgment shall constitute and be accepted as the

6 written statement authorizing confession of judgment as provided in 28 USC § 1874, Nevada

7 Revised Statute 17.090 et. seq., and similar statutes;

8 The circumstances giving rise to this Confession of Judgment are as follows:

9 1. In order to effectuate Internal Revenue Code Section 1031 exchanges, the

10 Plaintiff deposited exchange funds with SWX (Southwest Exchange, Inc. and its affiliates,

11 including QES, are collectively referred to herein as "SWX"), a Qualified Intermediary owned

12 or controlled by McGhan;

13 2. From in or about July 2004, until the collapse of SWX in January 2007, McGhan

14 knowingly, intentionally, and fraudulently withheld from SWX clients and potential clients,

15 including Plaintiff, information regarding his lending SWX money to entities to purchase

16 Eurosilocone. McGhan knew that the clients and potential clients would consider such practice

17 too risky and would not use the services of SWX

18 3. From, at least, August 30, 2006, until the collapse of SWX in January 2007,

19 McGhan knew that SWX was insolvent and did not have sufficient liquid assets or sources of

20 capital to satisfy its contractual obligations to purchase Replacement Properties for new clients.

21 Yet, at McGhan's direction, SWX continued to aggressively market itself and seek new

22 customers under the false premise that SWX was financially secure and stable.

23 4. As a result of the above and foregoing, from at least August 30, 2006 to January 30,

24 2007, McGhan falsely and fraudulently deceived clients, including Plaintiff, into believing he

25 was operating SWX consistently with the terms of the SWX contracts with its customers, had

26 invested the trust funds in such a manner so as to meet the customer's needs, and that SWX

27 would be able to fund its clients' purchases of Replacement Properties to complete their 1031

28 exchanges. Between on or about August 30, 2006, and January 30, 2007, McGhan falsely and

Case 2:07-cv-01394-RCJ-PAL   Document 258   Filed 06/23/10   Page 119 of 120

1  fraudulently caused customers, including Plaintiff, to deposit approximately $93 million dollars

2  with SWX.

3      5.    The Plaintiff sued McGhan for, among other things, RICO violations based upon

4  the above and foregoing;

5      6.    For his actions at SWX, McGhan was indicted by the Federal Government and

6  has entered a plea of guilty to wire fraud in the criminal proceeding styled *USA v. McGhan*,

7  USDC NV Case No. 2:09-CR-00199-PMP-PAL.  The plea agreement executed in that action

8  (Docket No. 8) is incorporated herein by reference thereto.  Pursuant to his plea, McGhan has

9  admitted that he devised and intended to devise a scheme and artifice to defraud and obtain

10  money and property by means of false and fraudulent pretenses, representations and promises.

11      7.    In order to avoid the cost of continued litigation, McGhan has entered into a

12  "Wave V Settlement Agreement" with, among others, the Plaintiff, pursuant to which: (i)

13  McGhan has agreed to the entry of the Judgment against him in the amount of Plaintiff's lost

14  exchange funds; and (ii) the Plaintiff has agreed to forego all other claims against McGhan.

15      In lieu of immediately paying Plaintiff the amount McGhan admits he owes, McGhan

16  has agreed to confess judgment as set forth herein thereby granting to Plaintiff rights as a

17  judgment creditor;

18      McGhan expressly agrees that the confessed Judgment is for money obtained by means

19  of false and fraudulent pretenses, representations and promises.  As such, McGhan expressly

20  agrees that the Judgment is non-dischargeable pursuant to 11 USC § 523(a)(2)(A), 11 USC §

21  523(a)(4) and 11 USC § 523 (a)(6);

22      McGhan expressly agrees that, there is no just reason for the delay in entering the

23  Judgment and the Judgment, in the form attached hereto as Exhibit 1, shall be entered forthwith

24  pursuant to Federal Rule of Civil Procedure 54(b);

25  ...

26  ...

27  ...

28  ...
   ...

Gordon Silver
Attorneys At Law
Ninth Floor
I Howard Hughes Pkwy
Vegas, Nevada 89169
(702) 796-5555

101339-001/Exemplar attached to S.A.doc

3 of 4

**VERIFICATION**

STATE OF NEVADA          )
                                          )ss.
COUNTY OF CLARK        )

     Donald K. ,McGhan,  being  sworn, deposes and says:

That he is the Defendant in the above matter; he has read the foregoing Confession of

Judgment, knows the contents herein, and the same is true of his own knowledge, except as to

those matters therein stated on information and belief, as to those matters, he believes them to be

true.

     Dated this _____ day of _____, 2009.

_____
Donald K. McGhan

SUBSCRIBED and SWORN to before me
this _____ day of _____, 2009.

_____
NOTARY PUBLIC

Gordon Silver
Attorneys At Law
Ninth Floor
Howard Hughes Pkwy
/egas, Nevada 89169
(702) 796-5555

101339-001/Exemplar attached to S.A.doc